CATHY JACKSON, Guardian Ad Litem for Timothy Randall Jackson, minor, Plaintiff-Appellant v. NORTH CAROLINA DEPARTMENT OF HUMAN RESOURCES DIVISION OF MENTAL HEALTH, DEVELOPMENTAL DISABILITIES, AND SUBSTANCE ABUSE SERVICES, and ORANGE PERSON CHATHAM MENTAL HEALTH DEVELOPMENTAL DISABILITIES AND SUBSTANCE ABUSE AUTHORITY, Defendant-appellees

No. COA97-1169

(Filed 20 October 1998)

### 1. Administrative Law— failure to exhaust administrative remedies—appeal procedures not published

The trial court did not err by dismissing plaintiff's complaint for failure to exhaust administrative remedies where plaintiff sought monetary damages, a declaratory judgment, and injunctive relief arising from defendant's failure to approve and fund the readmission of her son to a hospital for treatment of bipolar and attention deficit disorders. Although plaintiff contended that defendants did not provide her with information about administrative remedies and that defendants violated her son's due process rights by failing to publish or promulgate appeal procedures as required by the Administrative Procedure Act, the Act itself provides adequate remedies in the absence of administrative rules. Plaintiff here has not sought any form of administrative relief but is instead attempting to avoid the Act entirely and seek immediate relief in the courts.

### 2. Administrative Law— failure to exhaust administrative remedies—adequacy of remedies

The trial court did not err by dismissing plaintiff's complaint for failure to exhaust administrative remedies where plaintiff sought monetary damages, a declaratory judgment, and injunctive relief arising from defendant's failure to approve and fund the readmission of her son to a hospital for treatment of bipolar and attention deficit disorders. Although plaintiff contended that the remedies available at the administrative level were inadequate to resolve her claims because she had requested injunctive relief which could only be ordered by the court, it is neither impractical nor inappropriate to require a contested administrative hearing to determine initially whether plaintiff's son is being improperly denied necessary care. Plaintiff should not be permitted to bypass administrative procedures merely by pleading a request for injunctive relief.

**3. Administrative Law— failure to exhaust administrative remedies—monetary damages**

The trial court did not err by dismissing plaintiff's complaint for failure to exhaust administrative remedies where plaintiff sought monetary damages, a declaratory judgment, and injunctive relief arising from defendant's failure to approve and fund the readmission of her son to a hospital for treatment of bipolar and attention deficit disorders. Although plaintiff contended that administrative remedies were inadequate because her son could not be financially compensated for damages through administrative procedures, plaintiff's primary claim is for the provision of mental health care to which she claims her son is entitled under Federal and State Medicaid programs. That is an issue which should properly be determined in the first instance through administrative procedures without premature intervention by the courts; the insertion of a prayer for monetary damages does not render administrative relief inadequate.

**4. Administrative Law— failure to exhaust administrative remedies—consideration of evidence**

The trial court did not err when dismissing a complaint for failure to exhaust administrative remedies where plaintiff sought monetary damages, a declaratory judgment, and injunctive relief arising from defendant's failure to approve and fund the readmission of her son to a hospital for treatment of bipolar and attention deficit disorders and contended that defendant-OPC was improperly allowed to place contested facts before the court concerning whether plaintiff had given and abandoned notice of appeal to OPC's appeals panel. The court made no finding with respect to the "contested facts," and there is no indication that the trial judge considered anything other than the allegations of the complaint and the parties' legal arguments with respect thereto.

Appeal by plaintiff from order entered 22 April 1997 by Judge Robert H. Hobgood in Orange County Superior Court. Heard in the Court of Appeals 30 April 1998.

*Legal Services of North Carolina, Mental Health Unit, by Susan M. Epstein and Lewis Pitts; and National Health Law Program, by Jane Perkins, for plaintiff-appellant.*

*Attorney General Michael F. Easley, by Special Deputy Attorney General Robert T. Hargett, and Assistant Attorney General*

*Bruce S. Ambrose, for North Carolina Department of Human Resources Division of Mental Health, Developmental Disabilities, and Substance Abuse Services.*

*Brown & Bunch, by M. LeAnn Nease and Scott D. Zimmerman, for defendant-appellee, Orange-Person-Chatham Mental Health, Developmental Disabilities and Substance Abuse Authority.*

MARTIN, John C., Judge.

In this action, plaintiff, who is the duly appointed guardian *ad litem* for her minor son, Timothy Randall Jackson (Randy), seeks monetary damages as well as injunctive and declaratory relief. In her amended complaint, plaintiff alleged that Randy, who resides with her in Orange County, North Carolina, suffers from bipolar and attention deficit disorders, which have caused him to exhibit severe aggression and impulsivity since he was four years old. Randy has been placed on a number of psychotropic drugs to control his behavior. Randy is a Medicaid eligible child enrolled in the North Carolina Alternatives Mental Health Managed Care Program (Carolina Alternatives). Defendant North Carolina Department of Human Resources Division of Mental Health, Developmental Disabilities, and Substance Abuse Services (DMH) is the single state agency designated by G.S. § 108A-54 to administer the State's Medicaid Assistance Program through which Medicaid is provided, including Carolina Alternatives. Defendant Orange-Person-Chatham Mental Health, Developmental Disabilities and Substance Abuse Authority (OPC) is an area authority which implements the managed care plan in its geographical area in accordance with the provisions of Chapter 122C of the General Statutes.

In January 1996, Randy was admitted to the Child Neuropsychiatry Unit at the University of North Carolina Hospital for treatment and remained there, except for a brief discharge, until 17 February 1996. By the end of February, Randy's behavioral problems were escalating and, on 1 March 1996, his treating physician, Dr. Thomas Gualtieri, an approved care provider, recommended that Randy be readmitted to the hospital for adjustment of his medication and stabilization. Approval from OPC was required for Randy's readmission to the hospital; OPC refused to approve and fund his readmission. Plaintiff alleged that, despite her repeated requests, OPC never provided her with written information concerning Randy's appeal rights, and did not provide her with written notice of the denial of care until 15 March 1996. Plaintiff alleged that as a result of the denial of care,

Randy's condition worsened and he "developed medication side effects that required discontinuation of the medication, worsening his aggression and impulsivity, and increasing his insomnia and destructiveness." As a result, Randy "could not safely attend school, play with others, or leave the confines of his home."

On 26 March 1996, plaintiff filed her original complaint in this action in which she sought injunctive relief requiring OPC to approve payment for Randy's hospitalization. On 28 March 1996, OPC gave approval for Randy's immediate admission to the hospital. Plaintiff alleged that she received, on 4 April 1996, a document entitled "Carolina Alternatives Appeals and Grievances Procedure."

On 18 October 1996 plaintiff applied for the appointment of a guardian *ad litem* for Randy and moved to amend the complaint to add DMH as a defendant. On 15 November 1996 the trial court appointed plaintiff as guardian *ad litem* and allowed the motion to amend. In her amended complaint, plaintiff alleged that Randy was damaged by defendants' denial of the medical care to which he was entitled, that he was damaged by their denial of his due process rights, and that the "Carolina Alternatives Appeals and Grievances Procedure" is unconstitutional. She sought compensatory damages for defendants' alleged denial of medical care and denial of due process, injunctive relief to prevent future care and due process denials by defendants, and a declaratory judgment that defendants' appeals process is unconstitutional.

Defendants answered and moved to dismiss pursuant to G.S. § 1A-1, Rule 12(b)(1). The trial judge granted the motions of both defendants, dismissing the complaint without prejudice for plaintiff's failure to exhaust administrative remedies. Plaintiff gave notice of appeal from the dismissal of her claims for injunctive relief and damages, but specifically did not give notice of appeal from that portion of the order dismissing her claim for declaratory relief.

By multiple assignments of error, plaintiff contends the trial court erred when it dismissed her complaint pursuant to G.S. § 1A-1, Rule 12(b)(1) on the grounds that it lacked subject matter jurisdiction because plaintiff had failed to exhaust her administrative remedies. As a general rule, it is the policy of this State that disputes between its administrative agencies and its citizens be resolved pursuant to the provision of the Administrative Procedure Act, G.S. § 150B-22, and that judicial review of an administrative decision may

be had only after all administrative remedies have been resolved. N.C. Gen. Stat. § 150B-43.

> [F]ive requirements must generally be satisfied before a party may ask a court to rule on an adverse administrative determination: (1) the person must be aggrieved; (2) there must be a contested case; (3) there must be a final agency decision; (4) administrative remedies must be exhausted; and (5) no other adequate procedure for judicial review can be provided by another statute.

*Huang v. N.C. State University*, 107 N.C. App. 710, 713, 421 S.E.2d 812, 814 (1992). "Whether one has standing to obtain judicial review of an administrative decision is a question of subject matter jurisdiction." *Carter v. N.C. State Bd. of Registration for Professional Engineers & Land Surveyors*, 86 N.C. App. 308, 313, 357 S.E.2d 705, 708 (1987).

I.

**[1]** By her first assignment of error, plaintiff contends the trial court's dismissal of her complaint for failure to exhaust administrative remedies was error, because defendants did not provide plaintiff with information with respect to administrative remedies during the period in which Randy was being denied care, and because defendants violated Randy's due process rights by their failure to publish or promulgate appeal procedures as required by the North Carolina Administrative Procedure Act, G.S. § 150B-1 *et seq.* (NCAPA). Plaintiff contends that the only applicable rule is found in the codification of the Carolina Alternatives Program at 10 Admin. Code tit. 26M, r. .0305, and that it is insufficient to satisfy Randy's due process rights. The aforementioned rule provides only that enrollees have a right to appeal decisions of the OPC, but does not explain the appropriate appellate procedures: "Enrollees and sub-contractors shall have the right to appeal decisions of an Area Authority as required by 42 CFR *et seq.*" 10 N.C. Admin. Code tit. 26M, r. .0305. Plaintiff argues, therefore, that the trial judge erred by ruling that she was required to exhaust remedies that she was unable to find, because they were not properly promulgated and published. We hold, however, that in the absence of administrative rules promulgated by the OPC, the NCAPA itself provides adequate remedies for Randy's grievance which must be exhausted before the complaint is justiciable.

The NCAPA was drafted to " 'establish a uniform system of administrative rule making and adjudicatory procedures for agencies.' " *Empire Power Co. v. N.C. Dept. of E.H.N.R.*, 337 N.C. 569, 586, 447 S.E.2d 768, 778 (1994), *reh'g denied*, 338 N.C. 314, 451 S.E.2d 634 (1994) (quoting N.C. Gen. Stat. § 150B-1(a) (1991)). Administrative decisions of State agencies are subject to review only under the provisions of the NCAPA, unless the agency is specifically exempted from its provisions by NCAPA itself or some other statute. *Id.* "[T]he General Assembly has shown itself to be quite capable of specifically and expressly naming the particular agencies to be exempt from the provisions of the Act and has clearly specified the extent of each exemption." *Id.* at 587, 447 S.E.2d 779 (quoting *Vass v. Bd. of Trustees of Teachers' and State Employees' Comprehensive Major Medical Plan*, 324 N.C. 402, 379 S.E.2d 26 (1989)). G.S. § 122C-131 *et seq.*, establishes a statewide system to provide treatment for individuals suffering from mental health disorders, developmental disabilities and substance abuse. The statutory scheme does not exclude either defendant from the administrative procedures codified in the NCAPA. N.C. Gen. Stat. § 150B-1(c); N.C. Gen. Stat. § 122C-131 *et seq.* Therefore, the provisions of the NCAPA apply to defendants OPC and DMH as entities established to administer Carolina Alternatives under contract with the State of North Carolina.

Plaintiff's argument relies erroneously upon G.S. § 150B-18, which states that "[a] rule is not valid unless it is adopted in substantial compliance with this Article." N.C. Gen. Stat. § 150B-18 (1991). The necessary procedures for substantial compliance are outlined in G.S. § 150B-21.2 (1995). While it is true that the NCAPA requires that an agency follow the specified procedures to validate any rules it decides to promulgate, the Act does not require agencies to promulgate appellate procedures as plaintiff contends. The NCAPA anticipates that agencies will not always promulgate administrative remedies, and accordingly provides that, unless specifically exempt from the NCAPA, "the (agency's) decisions are subject to administrative review under the Act." *Vass*, 324 N.C. at 407, 379 S.E.2d at 29.

The administrative remedies of the NCAPA provide an aggrieved party with the right to initiate a hearing to resolve disputes involving the party's rights, duties, or privileges. N.C. Gen. Stat. § 150B-22 (1991); *Empire Power Co.*, 337 N.C. at 587, 447 S.E.2d at 779. When a dispute arises between a private citizen and a state agency which cannot be informally resolved, the procedure for resolution of the dis-

pute is governed by the NCAPA. N.C. Gen. Stat. § 150B-1 *et seq.;* *North Buncombe Assn. of Concerned Citizens, Inc. v. Rhodes,* 100 N.C. App. 24, 394 S.E.2d 462, *disc. review denied,* 327 N.C. 484, 397 S.E.2d 215 (1990). A "person aggrieved" is statutorily defined as a "person or group of persons of common interest directly or indirectly affected substantially in his or its person, property or employment, by an administrative decision." N.C. Gen. Stat. § 150B-2(6); *Empire Power Co.,* 337 N.C. at 587, 447 S.E.2d at 779. There is no question that Randy became an aggrieved person when he was denied medical care by the OPC, and he was thus entitled to an administrative hearing pursuant to the NCAPA as the appropriate appellate procedure from such denial.

Plaintiff relies upon *Orange County SHAPE v. North Carolina Dept. of Transportation,* 46 N.C. App. 350, 265 S.E.2d 890, *disc. review denied,* 301 N.C. 94 (1980) to argue that defendants' failure to publish administrative remedies alleviates the necessity for exhaustion of remedies. In *SHAPE,* the plaintiffs were not required to exhaust administrative remedies because the agency had not published them as required by the NCAPA; the court stated that "it would contravene the most rudimentary principles of due process for this Court to deny the appellants a right of judicial review because they had not exhausted an administrative remedy . . . which is effectively hidden in the catacombs of state bureaucracy." *Id.* at 377, 265 S.E.2d at 908. *SHAPE* is distinguishable from the present case because, in *SHAPE,* the plaintiffs were seeking judicial review of a decision by the North Carolina Board of Transportation after they had already begun to follow the administrative procedures outlined in the Board of Transportation's enabling statute; the statute under which the OPC was created does not include appellate procedures for plaintiff to follow, obscure or otherwise. Plaintiff, in this case, has not sought any form of administrative relief but is instead attempting to avoid the NCAPA entirely and seek immediate relief in the courts. " 'To permit the interruption and cessation of proceedings before a commission by untimely and premature intervention by the courts would completely destroy the efficiency, effectiveness and purpose of the administrative agencies." *Church v. Madison County Bd. of Ed.,* 31 N.C. App. 641, 646-47, 230 S.E.2d 769, 772 (1976), *disc. review denied,* 292 N.C. 264, 233 S.E.2d 391 (1977) (quoting *Elmore v. Lanier,* 270 N.C. 674, 155 S.E.2d 114 (1967)). Accordingly, we reject plaintiff's arguments that she is excused from the requirement that she exhaust administrative remedies before seeking judicial review of defendants' actions, or that Randy's due process rights were violated because the

defendants did not promulgate and publish procedures for administrative review of their decision with respect to the provision of treatment. We hold that appropriate remedies were available and discoverable under the NCAPA. Plaintiff's first assignment of error is overruled.

## II.

**[2]** Plaintiff asserts the trial court erred in dismissing her complaint for her failure to exhaust administrative remedies because the remedies available at the administrative level were inadequate to resolve her claims. When the General Assembly provides an effective administrative remedy by statute, that remedy is exclusive and the party must pursue and exhaust it before resorting to the courts. *Church*, 31 N.C. App. at 647, 230 S.E.2d at 772. On the other hand, if the remedy established by the NCAPA is inadequate, exhaustion is not required. *Huang v. N.C. State University, supra.* The burden of showing inadequacy is on the party claiming inadequacy, who must include such allegations in the complaint. *Id.* "The remedy is considered inadequate unless it is 'calculated to give relief more or less commensurate with the claim,' " *Id.* at 715, 421 S.E.2d at 815 (quoting L. Jaffe, Judicial Control of Administrative Action, at 426 (1965)).

Plaintiff acknowledges that she had the burden of pleading futility or inadequacy of the administrative remedy, but argues that she did so properly. Her complaint includes the following allegations:

17. Exhaustion of any purported administrative appeals was, and is, futile, pointless, and inadequate because they cannot provide the remedies sought and because they facially violate due process of law guaranteed by the state constitution and law.

26. The Appeals Process is futile because it fails to consider the circumstances and abilities of the enrollees who are required to use the process, and provides unnecessary and unrealistic hurdles for an enrollee seeking review, in violation of state law.

27. The Appeals Process fails to provide a pre-denial evidentiary hearing for enrollees seeking urgent care, and the expedited review process is futile because the process cannot provide the immediate need for relief from an erroneous decision. An enrollee denied emergency care must wait five days for a decision, without care paid while the reconsideration is pending, in violation of state law.

28. The Appeals Process fails to inform the enrollee of his right to appeal directly to the single State Agency (DMH) from the decision of the Area Authority and receive a de novo evidentiary hearing at the State Agency level, in violation of state law.

29. Unless restrained by court order the defendants will continue to corrupt the medical judgment of the treating physician and deprive Randy Jackson of medically necessary care and due process of law.

Though the complaint has specifically alleged the inadequacy and futility of administrative review, *see Faulkenbury v. Teachers' & State Employees' Retirement System*, 108 N.C. App. 357, 424 S.E.2d 420, *affirmed*, 335 N.C. 158, 436 S.E.2d 821 (1993), the allegations do not end our inquiry, especially in view of plaintiff's decision not to pursue her claim for a declaratory judgment. The complaint must be carefully scrutinized " 'to ensure that the claim for relief [is] not inserted for the sole purpose of avoiding the exhaustion rule.' " *Huang* at 715, 421 S.E.2d at 816, (quoting *Plano v. Baker*, 504 F.2d 595, 599 (2d Cir. 1974)). Thus, we must consider whether the available administrative remedies were indeed inadequate to resolve her claims.

Plaintiff argues dismissal was improper because she requested injunctive relief which could only be ordered by the court. "A pleading that alleges inadequacy of administrative remedy states a claim upon which equitable relief may be granted if the circumstances warrant it." *Lloyd v. Babb*, 296 N.C. 416, 426-27, 251 S.E.2d 843, 851 (1979). In *Lloyd*, the Court determined that plaintiff's claim for equitable relief could properly go forward because the available administrative remedy would have required the plaintiffs to individually challenge the voting rights of between 6,000 and 10,000 persons, and, therefore, would not provide an effective remedy. *Lloyd, supra.* In the present case, plaintiff alleged that "(u)nless restrained by court order the defendants will continue to corrupt the medical judgment of the treating physician and deprive Randy of medically necessary care and due process of law." The circumstances alleged by plaintiff lack the impracticalities present in *Lloyd*; it is neither impractical nor inappropriate to require a contested administrative hearing to determine initially whether Randy is being improperly denied necessary care and the availability of such a hearing is an adequate remedy. Plaintiff should not be permitted to bypass administrative procedures by merely pleading a request for injunctive relief.

**[3]** Plaintiff also argues available administrative remedies are inadequate because she alleged Randy had been damaged as a result of defendants' intentional denial of urgent medical care and their denial of his right to due process, and he cannot be financially compensated for such damages through administrative procedures. Though plaintiff's argument might, at first glance, appear to have merit, we reject it. In arguing the inadequacy of administrative relief for the alleged violation of Randy's constitutional right to due process in her fourth assignment of error, plaintiff relies on the decision of our Supreme Court in *Corum v. University of North Carolina through Bd. of Governors*, 330 N.C. 761, 413 S.E.2d 276, *reh'g denied*, 331 N.C. 558, 418 S.E.2d 664, *cert. denied, Durham v. Corum*, 506 U.S. 985, 121 L.Ed.2d 431 (1992), in which our Supreme Court recognized a direct claim for relief against the State for an alleged violation of a party's constitutional right where no other adequate remedy existed. There are critical distinctions between this case and *Corum*, however. In *Corum*, the plaintiff had utilized his administrative remedies. Moreover, the defendant University of North Carolina is specifically exempted from the provisions of the NCAPA. Thus, the exhaustion of administrative remedies was not an issue in *Corum*. The *Corum* Court recognized that its facts were unique and warned:

> When called upon to exercise its inherent constitutional power to fashion a common law remedy for a violation of a particular constitutional right, however, the judiciary must recognize two critical limitations. First, it must bow to established claims and remedies where these provide an alternative to the extraordinary exercise of its inherent constitutional power. Second, in exercising that power, the judiciary must minimize the encroachment upon other branches of government—in appearance and in fact—by seeking the least intrusive remedy available and necessary to right the wrong (citations omitted).

*Id.* at 784, 418 S.E.2d at 291.

The purpose of a contested case under the NCAPA is to determine a person's rights, duties or privileges where a dispute with a state agency over such matters cannot otherwise be resolved. N.C. Gen. Stat. § 150B-23. Notwithstanding the relief for which plaintiff prays in this case, we must focus on the allegations of her complaint; plaintiff's primary claim is for the provision of mental health care to which she asserts Randy is entitled under Federal and State Medicaid programs. That is an issue which should properly be deter-

mined in the first instance by the agencies statutorily charged with administering the public system for the delivery of such care, through administrative procedures and without premature intervention by the courts. The procedures available through the NCAPA are calculated to require, if plaintiff is correct, the provision of such care and, thus, "to give relief more or less commensurate" with her claim. We do not believe plaintiff's insertion of a prayer for monetary damages in this case renders administrative relief inadequate so as to relieve her from the requirement that she exhaust available administrative remedies before resorting to the courts.

### III.

[4] Finally, we consider plaintiff's contention that OPC "improperly placed contested facts before the trial court during oral and written argument . . ." which should not have been considered by the trial court in ruling upon the motion to dismiss. The alleged "contested facts" concerned whether plaintiff had given, and later abandoned, notice of appeal to OPC's appeals panel. According to plaintiff's argument, "a plaintiff who takes an appeal from an administrative decision, and then fails to complete it, arguably may be deemed not to have exhausted their administrative remedy prior to seeking judicial review." Thus, she asserts, she was prejudiced if the trial court considered OPC's improper argument in reaching its decision to dismiss her complaint.

Defendants respond that even if the court had considered the material, OPC presented it only in support of its argument that the complaint should be dismissed with prejudice. Since the dismissal was without prejudice, defendants argue there was no prejudice to plaintiff.

The trial court made no finding with respect to the "contested facts" to which plaintiff objects and, from our review of the record and the trial court's order dismissing this action, we discern no indication that the able trial judge considered anything other than the allegations of the complaint and the parties' legal arguments with respect thereto in reaching his decision to dismiss plaintiff's complaint without prejudice. Thus we overrule plaintiff's sixth assignment of error.

For the foregoing reasons, the order of dismissal is affirmed.

Affirmed.

Judges WYNN and WALKER concur.

(Judge WYNN concurred in this opinion prior to 1 October 1998.)