SHELL ISLAND HOMEOWNERS ASSOCIATION, INC., a North Carolina non-profit corporation; CHARLES B. CASTEEN and wife BARBARA M. CASTEEN; and RICHARD R. SCHNABEL and wife DOROTHY L. SCHNABEL, Plaintiffs v. EUGENE B. TOMLINSON, Chairman North Carolina Coastal Resources Commission; NORTH CAROLINA COASTAL RESOURCES COMMISSION; DEPARTMENT OF ENVIRONMENT AND NATURAL RESOURCES FOR THE STATE OF NORTH CAROLINA; WAYNE McDEVITT, Secretary of the Department of Environment and Natural Resources; and the STATE OF NORTH CAROLINA, Defendants, and NORTH CAROLINA COASTAL FEDERATION, INC., Intervenor-Defendant

No. 98-961

(Filed 20 July 1999)

## 1. Jurisdiction— subject matter—failure to exhaust administrative remedies

The trial court did not err by dismissing plaintiffs' claims for lack of subject matter jurisdiction in an action challenging Coastal Resources Commission rules where plaintiffs failed to exhaust all available administrative remedies prior to filing this action. Although plaintiffs argued the futility of administrative remedies, they pointed to no authority for the premise that an agency's rules prohibiting a certain activity render the administrative remedies to contest that prohibition inadequate and futile.

## 2. Jurisdiction— subject matter—constitutional claims—exhaustion of administrative remedies—not required

Dismissal of constitutional claims arising from coastal management rules and regulations for lack of subject matter jurisdiction due to failure to exhaust administrative remedies was not proper. Exhaustion of administrative remedies was not required as to these claims.

## 3. Constitutional Law— coastal management rules—equal protection and due process

Plaintiffs' due process and equal protection challenges to coastal management rules were properly dismissed under N.C.G.S. § 1A-1, Rule 12(b)(6) where plaintiffs acknowledged in their complaint that they sought, received, and took full advantage of a variance granted pursuant to the challenged regulatory scheme. One who voluntarily proceeds under a statute and claims benefits thereby conferred will not be heard to question its constitutionality in order to avoid its burdens. Moreover, the

protection of lands of environmental concern is a legitimate interest of government, as is the need for public access and use of ocean beaches, and the hardened structure rules are clearly rationally related to a legitimate government end.

### 4. Constitutional Law— taking without compensation— coastal management rules—hardened structures

The trial court properly dismissed plaintiffs' takings challenge to coastal management rules regarding hardened structures where plaintiffs failed to identify in the complaint any legally cognizable property interest which has been taken by defendants. The invasion of property and reduction in value which plaintiffs allege clearly stems from the natural migration of an inlet and plaintiffs did not cite any persuasive authority for the proposition that a littoral or riparian landowner has a right to erect hardened structures in statutorily designated areas of environmental concern to protect their property from erosion and migration. Additionally, hardened structure rules were contained in the regulatory scheme under which the original permit was issued, so that there can be no claim of a compensable taking by reason of the regulations.

### 5. Constitutional Law— coastal management rules—no violation of procedural and substantive due process

There was no violation of procedural and substantive due process in the denial of permits for plaintiffs to construct hardened erosion control structures to protect their property from the migration of an ocean inlet. Plaintiffs have shown no established right to construct hardened structures in areas of environmental concern and the allegations of the complaint detail the administrative process through which plaintiffs have been provided an ample opportunity to be heard and to seek review of defendant's decisions.

Appeal by plaintiffs from order entered 14 July 1998 by Judge James D. Llewellyn in New Hanover County Superior Court. Heard in the Court of Appeals 11 May 1999.

*Shanklin & McDaniel, L.L.P., by Kenneth A. Shanklin and Susan J. McDaniel; Ogletree, Deakins, Nash, Smoak & Stewart, P.C., by C.C. Harness, III, for plaintiff-appellants.*

*Attorney General Michael F. Easley, by Special Deputy Attorney General J. Allen Jernigan, Special Deputy Attorney General*

*Robin W. Smith, and Associate Attorney General Mary Penny Thompson, for defendant-appellees.*

*Southern Environmental Law Center, by Donnell Van Noppen, III, and Derb S. Carter, Jr., for intervenor-appellee.*

MARTIN, Judge.

Plaintiffs Casteen and Schnabel are owners of units at the Shell Island Resort Hotel Condominium ("Shell Island Resort"); plaintiff Shell Island Homeowners Association, Inc., is an association of all unit owners at Shell Island Resort, which is located at the north end of Wrightsville Beach, North Carolina, just south of Mason's Inlet. Plaintiffs filed this action on 7 January 1998 against Eugene B. Tomlinson, Chairman of the North Carolina Coastal Resources Commission, the North Carolina Coastal Resources Commission ("CRC"), the Department of Environment and Natural Resources for the State of North Carolina ("DENR"), Wayne DcDevitt, Secretary of DENR, and the State of North Carolina (hereinafter "defendants"), challenging the "hardened structure rule" and variance provision adopted by the CRC and codified at 15A NCAC 7H.0308 and 7H.0301. The rule provides:

> Permanent erosion control structures may cause significant adverse impacts on the value and enjoyment of adjacent properties or public access to and use of the ocean beach, and, therefore, are prohibited. Such structures include, but are not limited to: bulkheads; seawalls; revetments; jetties; groins and breakwaters.

15A NCAC 7H.0308(a)(1)(B) (Specific Use Standards for Ocean Hazard Areas); see also 15A NCAC 7H.0310(a)(2) ("Permanent structures shall be permitted at a density of no more than one commercial or residential unit per 15,000 square feet of land area on lots subdivided or created after July 23, 1981").

The factual history giving rise to this controversy is summarized in our opinion in *Shell Island Homeowners Assoc., Inc. v. Tomlinson,* 134 N.C. App. 286, 517 S.E.2d 401 (1999). Briefly, plaintiffs have sought permits to construct various hardened erosion control structures to protect Shell Island Resort from the southward migration of Mason's Inlet; defendants, enforcing the "hardened structure rule," have denied those applications and refused plaintiffs' requests for variances. Plaintiffs did not seek administrative review

of any of defendants' decisions enforcing the hardened structure rules, and they have not applied for a permit for a permanent erosion control structure since their application for a variance was originally denied on 6 February 1996. Instead, on 7 January 1998, over two years after plaintiffs submitted their original permit request, plaintiffs filed the complaint in this action alleging twelve claims for declaratory and injunctive relief by which they (1) challenge the validity and enforcement of the hardened structure rules; (2) seek a declaration that plaintiffs have the right to build a permanent hardened erosion control structure of unspecified design; and (3) seek damages for a taking of their property without just compensation by reason of defendants' denial of their application for a CAMA permit for construction of a permanent erosion control structure.

The North Carolina Coastal Federation ("intervenor-defendant") was permitted to intervene as a party defendant on 4 March 1998. Defendants moved to dismiss plaintiff's complaint pursuant to G.S. § 1A-1, Rules 12(b)(1), 12(b)(2), and 12(b)(6). On 14 July 1998, the trial court entered an order dismissing plaintiffs' complaint pursuant to Rule 12(b)(1) because plaintiffs "lack standing to claim that the Court has jurisdiction of the subject matter and the person because they have not made a showing of futility as to seeking full administrative remedy as provided by law," and pursuant to Rule 12(b)(6) for failure of the complaint to state a claim upon which relief may be granted. Plaintiffs appeal.

I.

We must first consider whether the trial court had subject matter jurisdiction to consider the claims alleged in plaintiffs' complaint. Subject matter jurisdiction is a prerequisite for the exercise of judicial authority over any case or controversy, *Harris v. Pembaur*, 84 N.C. App. 666, 353 S.E.2d 673 (1987).

A.

**[1]** Plaintiffs argue that the trial court erred when it dismissed plaintiffs' claims for lack of subject matter. An action is properly dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction where the plaintiff has failed to exhaust administrative remedies. *Bryant v. Hogarth*, 127 N.C. App. 79, 488 S.E.2d 269, *disc. review denied*, 347 N.C. 396, 494 S.E.2d 406 (1997); *Concerned Citizens v. N.C. Environmental Management Comm'n.*, 89 N.C. App. 708, 367 S.E.2d 13 (1988). "[W]here the legislature has provided by statute an

effective administrative remedy, that remedy is exclusive and its relief must be exhausted before recourse may be had to the courts." *Presnell v. Pell*, 298 N.C. 715, 721, 260 S.E.2d 611, 615 (1979); *Jackson v. NCDHR*, 131 N.C. App, 179, 183, 505 S.E.2d 899, 903-04 (1998), *disc. review denied*, 350 N.C. 594, —— S.E.2d —— (1999); *Bryant* at 83, 488 S.E.2d at 271. Under the Administrative Procedure Act ("APA"),

> Any person who is aggrieved by the final decision in a contested case, and who has exhausted all administrative remedies made available to him by statute or agency rule, is entitled to judicial review of the decision under this Article, unless adequate procedure for judicial review is provided by another statute . . . .

N.C. Gen. Stat. § 150B-43 (1998).

Thus, in order to seek judicial review of an adverse administrative decision, a party must show: (1) the party is an aggrieved party; (2) there is a contested case; (3) there has been a final agency decision; (4) all administrative remedies have been exhausted; and (5) no other adequate procedure for judicial review is provided by another statute. *Huang v. N.C. State University*, 107 N.C. App. 710, 421 S.E.2d 812 (1992). Moreover, this Court has stated,

> [t]he policy of judicial restraint acquires the status of a jurisdictional prerequisite when the legislature has explicitly provided the means for a party to seek effective judicial review of a particular administrative action. This procedure is particularly efficient when the subject of inquiry is of a very technical nature or involves the analysis of many records. Accordingly, a statute under which an administrative board has acted, which provides an orderly procedure for appeal to the superior court is the exclusive means for obtaining such judicial review. Furthermore, the policy of requiring exhaustion of administrative remedies does not require merely the initiation of the prescribed procedures, but that they should be pursued to their appropriate conclusion and final outcome before judicial review is sought. We read G.S. § 113A-121.1 to require that a party entitled to its provisions must first challenge a decision to deny or grant a permit by way of a petition to the Coastal Resources Commission.

*Leeuwenburg v. Waterway Inv. Ltd. Partnership*, 115 N.C. App. 541, 545, 445 S.E.2d 614, 617 (1994) (citations omitted).

In the present case, plaintiffs have not pursued any of the options available to them under CAMA and the APA for timely administrative review of defendants' decisions to deny the permit and variance requests pursuant to the hardened structure rules. Plaintiffs could have sought administrative review of the permit denials pursuant to G.S. § 113A-121.1, and filed for a contested case hearing under G.S. § 150B-23 within 20 days after a denial, thereby obtaining an administrative hearing in which a full record could have been developed to determine whether "the agency (1) exceeded its authority or jurisdiction, (2) acted erroneously, (3) failed to use proper procedure, (4) acted arbitrarily or capriciously, or (5) failed to act as required by law or rule." N.C. Gen. Stat. § 150B-23. Moreover, plaintiffs could have obtained a hearing on any of their applications for a variance pursuant to G.S. § 113A-120.1, or they could have brought an action under G.S. § 113A-123(b) alleging a regulatory taking, and seeking relief from application of the rule. Under this provision, a person may obtain superior court review as to whether the CRC decision,

> so restricts the use of his property as to deprive him of the ractical uses thereof, being not otherwise authorized by law, and is therefore an unreasonable exercise of the police power because the order constitutes the equivalent of taking without compensation.

N.C. Gen. Stat. § 113A-123(b). If it were determined, upon such review, that the hardened structure rules effect an unconstitutional taking of plaintiffs' property, plaintiffs would be granted relief from application of the rules. *Id.* Plaintiffs could have also sought a declaratory ruling from the CRC applying and interpreting its rules. N.C. Gen. Stat. § 113A-124(c)(7); N.C. Gen. Stat. § 150B-4. Indeed, plaintiffs have not even applied for a permit for the erosion control structure requested in their amended complaint in this action. Clearly, plaintiffs have failed to exhaust all available administrative remedies prior to filing this action.

Nevertheless, plaintiffs argue they should not be required to exhaust their administrative remedies because the remedies provided by CAMA and the APA are inadequate to provide the relief sought, and therefore, seeking such remedies would be futile. Where the remedy established by the APA is inadequate, exhaustion is not required. *Jackson* at 186, 505 S.E.2d at 904 (citing *Huang, supra*). " 'The remedy is considered inadequate unless it is "calculated to give relief more or less commensurate with the claim," ' " *Id.* (quoting *Huang* at

715, 421 S.E.2d at 815). The plaintiffs have the burden of showing, by allegations in the complaint, that the particular remedy is inadequate. *Id.*

Here, plaintiffs have argued the "practical and legal futility of applying for the hardened structure sought in the Complaint" on the grounds that the hardened structure rules are firm rules, the rigidity of which is demonstrated by the 5 August 1996 and 10 October 1996 final orders of the CRC, as well as the denial of three of the four variance requests. However, plaintiffs point to no authority for the premise that an agency's rules prohibiting a certain activity render the administrative remedies to contest the prohibition inadequate and futile. The means enumerated above by which CAMA and the APA afford review of plaintiffs' claims provide plaintiffs with relief more or less commensurate with their claims; if they are correct in their allegations, plaintiffs could have obtained a determination that they are entitled to construct a hardened erosion control structure; that they are entitled to a variance from the hardened structure rules; that defendants have acted beyond authority or failed to act in accordance with rule or law; or that the regulations themselves are invalid. In *Jackson, supra,* we stated:

> The procedures available through the NCAPA are calculated to require, if plaintiff is correct, the provision of [the care which plaintiff seeks]. . . and, thus, "to give relief more or less commensurate" with her claim. We do not believe plaintiff's insertion of a prayer for monetary damages in this case renders administrative relief inadequate so as to relieve her from the requirement that she exhaust available administrative remedies before resorting to the courts.

*Jackson* at 189, 505 S.E.2d at 905. Likewise, plaintiffs' assertion in this case that defendants rigorously enforce the hardened structure rules is insufficient to relieve plaintiffs of the requirement that they attempt to avail themselves of administrative remedies prior to seeking relief in superior court.

Plaintiffs also argue that the trial court ignored relevant evidence which was properly before it in ruling on defendants' Rule 12(b)(1) motion, because it did not consider affidavits submitted by plaintiffs in opposition to the motion. Plaintiffs correctly argue that the trial court is not limited to a consideration of the pleadings in ruling upon a motion to dismiss pursuant to Rule 12(b)(1), and may properly consider evidence such as affidavits. *Smith v. Privette,* 128 N.C. App.

490, 495 S.E.2d 462 (1998). The record is unclear as to whether the trial court refused to consider the affidavits, which plaintiffs contend establish the futility of administrative review, for any purpose or only as to defendants' motion to dismiss pursuant to Rule 12(b)(6). Assuming, however, that the trial court refused to consider the affidavits for any purpose, we have nonetheless considered them and we remain unpersuaded by the contentions expressed therein that administrative appeal would be futile because of the time period involved. Plaintiffs waited approximately two years after the original denial of their application of a hardened structure permit to seek any type of review, and only then by the filing of this action. Plaintiffs' failure to exhaust administrative remedies of the non-constitutional claims contained in their complaint renders such claims subject to dismissal for lack of subject matter jurisdiction; we affirm the order dismissing plaintiffs' claims denominated as their Third, Fifth, Eighth, Ninth, Tenth and Eleventh claims for relief, which challenge the application of the hardened structure rules on non-constitutional grounds, pursuant to G.S. § 1A-1, Rule 12(b)(1).

B.

[2] By claims denominated plaintiffs' First, Second, Fourth, Sixth, and Seventh claims for relief, plaintiffs challenge the constitutionality of CAMA and various rules and regulations promulgated thereunder and contend that defendants' policies and actions taken pursuant thereto have violated various of their rights under the constitutions of North Carolina and the United States. By their Twelfth claim, they seek damages for such violations. Where an aggrieved party challenges the constitutionality of a regulation or statute, administrative remedies are deemed to be inadequate and exhaustion thereof is not required. *Meads v. N.C. Dep't of Agric.*, 349 N.C. 656, 509 S.E.2d 165 (1998). In that case, the North Carolina Department of Agriculture ("NCDA") argued that the superior court lacked subject matter jurisdiction where the plaintiffs had failed to exhaust administrative remedies by seeking a declaratory judgment from the agency as to the constitutionality of the regulations at issue. The Supreme Court stated:

The NCDA's argument, however, ignores our well-settled rule that a statute's constitutionality shall be determined by the judiciary, not an administrative board. *See Great Am. Ins. Co. v. Gold*, 254 N.C. 168, 118 S.E.2d 792 (1961); *see also Johnston v. Gaston County*, 71 N.C. App. 707, 323 S.E.2d 381 (1984), *disc. rev.*

*denied,* 312 N.C. 508, 329 N.C. 392 (1985). Because it is the province of the judiciary to make constitutional determinations, any effort made by Meads to have the constitutionality of the buffer-zone regulations determined by the Pesticide Board would have been in vain. Accordingly, given the constitutional nature of this issue, the NCDA options were inadequate, and therefore Meads was not required to exhaust them.

*Id.* at 670, 509 S.E.2d at 174.

In this case, exhaustion of administrative remedies was not required as to the claims alleged as plaintiffs' First, Second, Fourth, Sixth, Seventh, and Twelfth claims for relief and dismissal of those claims pursuant to G.S. § 1A-1, Rule 12(b)(1) was not proper. We must, therefore, consider whether the trial court's dismissal of those claims pursuant to G.S. § 1A-1, Rule 12(b)(6), for failure to state a claim upon which relief may be granted, was correct.

## II.

By their First, Second and Fourth claims for relief, plaintiffs allege violations of their constitutional rights to equal protection of the law, to due process, and to just compensation for a taking of their property; by their Sixth and Seventh claims, they challenge the constitutional validity of the hardened structure rules and the regulatory scheme under which the rules are promulgated. Finally, in their Twelfth claim for relief, plaintiffs seek damages for these alleged violations.

In determining whether a complaint is sufficient to survive a motion to dismiss under G.S. § 1A-1, Rule 12(b)(6), the question presented is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory." *Isenhour v. Hutto,* 129 N.C. App. 596, 598, 501 S.E.2d 78, 79, *review allowed,* 349 N.C. 360, 517 S.E.2d 895, (1998) (citing *Harris v. NCNB,* 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987)). "A complaint may be dismissed pursuant to Rule 12(b)(6) if no law exists to support the claim made, if sufficient facts to make out a good claim are absent, or if facts are disclosed which will necessarily defeat the claim." *Burgess v. Your House of Raleigh, Inc.,* 326 N.C. 205, 209, 388 S.E.2d 134, 136 (1990) (citing *Forbis v. Honeycutt,* 301 N.C. 699, 273 S.E.2d 240 (1981)).

SHELL ISLAND HOMEOWNERS ASS'N v. TOMLINSON

[134 N.C. App. 217 (1999)]

A.

[3] Plaintiffs' complaint alleges facts which necessarily defeat their Sixth and Seventh claims for relief, as well as their First claim for relief to the extent it challenges the hardened structure rules on equal protection and due process grounds. Plaintiffs allege that they applied for, received, and accepted a variance permit under the rules which they now challenge, and that, pursuant to the variance permit, they were able to construct a sandbag revetment which has protected the Shell Island Resort since 17 September 1997. " 'The rule is well settled that one who voluntarily proceeds under a statute and claims benefits thereby conferred will not be heard to question its constitutionality in order to avoid its burdens.' " *Bailey v. State of North Carolina*, 348 N.C. 130, 147, 500 S.E.2d 54, 64 (1998) (quoting *Convent of Sisters of St. Joseph v. City of Winston-Salem*, 243 N.C. 316, 324, 90 S.E.2d 879, 885 (1956)); *see also, e.g., Ratcliff v. County of Buncombe*, 81 N.C. App. 153, 343 S.E.2d 601 (1986); *Goforth Properties, Inc. v. Town of Chapel Hill*, 71 N.C. App. 771, 323 S.E.2d 427 (1984). The principle is an application of the broader doctrine of quasi-estoppel, which states that " '[w]here one having the right to accept or reject a transaction or instrument takes and retains benefits thereunder, he ratifies it, and cannot avoid its obligation or effect by taking a position inconsistent with it.' " *Carolina Medicorp, Inc. v. Board of Trustees*, 118 N.C. App. 485, 492-93, 456 S.E.2d 116, 120 (1995) (quoting *Redevelopment Com'n of Greenville v. Hannaford*, 29 N.C. App. 1, 4, 222 S.E.2d 752, 754 (1976)); *see also Meehan v. Meehan*, 116 N.C. App. 622, 448 S.E.2d 851 (1994); *Brooks v. Hackney*, 329 N.C. 166, 404 S.E.2d 854 (1991); *One North McDowell Assoc. of Unit Owners, Inc. v. McDowell Development Co.*, 98 N.C. App. 125, 389 S.E.2d 834, *disc. review denied*, 327 N.C. 432, 395 S.E.2d 687 (1990). Moreover, the acceptance of benefits precludes a subsequent inconsistent position, even where acceptance is involuntary, arises by necessity, or where, as in the case *sub judice*, a party voluntarily accepts a benefit in order to avoid the risk of harm. *Carolina Medicorp* at 493, 456 S.E.2d at 121.

In *Franklin Road Properties v. City of Raleigh*, 94 N.C. App. 731, 735, 381 S.E.2d 487, 490 (1989), this Court held that the plaintiff was precluded from attacking the validity of a zoning ordinance after the plaintiff had procured a variance under the ordinance. We stated:

[P]laintiff has clearly requested, obtained and accepted the benefits of a variance from § 10-2063(b) of the City Code, allowing

plaintiff to have parking and driveways in the fifty-foot unusable yard area. Plaintiff is therefore precluded from attacking the validity of this zoning ordinance . . . through its complaint seeking declaratory judgment.

*Id.; See Convent* at 325, 90 S.E.2d at 885 (accepting the benefits of a provision of a zoning ordinance precludes right to contest ordinance's validity); *see also, e.g., In re Appeal of Martin*, 286 N.C. 66, 209 S.E.2d 766 (1974) (county which exercised delegated tax power could not challenge constitutionality of certain exemptions); *Utilities Comm. v. Electric Membership Corp.*, 276 N.C. 108, 171 S.E.2d 406 (1970) (application for territorial rights precludes challenge to constitutionality of statute authorizing Utilities Commission to assign such rights); *City of Durham v. Bates*, 273 N.C. 336, 160 S.E.2d 60 (1968) (property owners precluded from challenging eminent domain statute after accepting payment, even though owners claimed reservation of rights); *Ramsey v. Veterans Commission*, 261 N.C. 645, 135 S.E.2d 659 (1964) (applicant for scholarship provided by statute precluded from challenging constitutionality of statute's eligibility requirements).

Here, because plaintiffs acknowledge in their complaint that they sought, received, and took full advantage of the variance granted pursuant to the regulatory scheme which they challenge, we hold, consistent with the above authority, that plaintiffs may not now assert a claim that the hardened structure rules and regulatory scheme under which the rules are promulgated are invalid and unconstitutional. Plaintiffs' Sixth and Seventh claims for relief, as well as the First claim for relief, to the extent it asserts claims of equal protection and due process, were properly dismissed pursuant to G.S. § 1A-1, Rule 12(b)(6).

B.

[4] The remaining issue for decision is whether plaintiffs' First, Second, and Fourth claims for relief in which they essentially allege that the hardened structure rules have effected a regulatory taking of plaintiffs' property without just compensation, for which taking they seek damages, state claims upon which relief can be granted. We hold these claims were also properly dismissed.

In their First claim for relief, plaintiffs allege that the rules both facially and as applied violate the Fifth and Fourteenth amendments of the Federal Constitution and similar state constitutional provisions in that the rules effect a taking of plaintiffs' property without

just compensation. Plaintiffs' Second claim for relief seeks a declaratory judgment that defendants' actions constitute an inverse condemnation of their property, and damages. Their Fourth claim for relief alleges that defendants' permit and variance denials were contrary to G.S. § 113A-128, which provides that "[n]othing in this Article authorizes any governmental agency to adopt a rule or issue any order that constitutes a taking of property in violation of the Constitution of this State or of the United States."

However, plaintiffs have failed to identify, on the face of the complaint, any legally cognizable property interest which has been taken by defendants. The invasion of property and reduction in value which plaintiffs allege clearly stems from the natural migration of Mason's Inlet, and plaintiffs have based their takings claim on their need for "a permanent solution to the erosion that threatens its property," and the premise that "[t]he protection of property from erosion is an essential right of property owners . . . ." The allegations in plaintiffs' complaint have no support in the law, and plaintiffs have failed to cite to this Court any persuasive authority for the proposition that a littoral or riparian landowner has a right to erect hardened structures in statutorily designated areas of environmental concern to protect their property from erosion and migration. The courts of this State have considered natural occurrences such as erosion and migration of waters to be, in fact, natural occurrences, a consequence of being a riparian or littoral landowner, which consequence at times operates to divest landowners of their property. Our Supreme Court has stated that when the location of a body of water constituting the boundary of a tract of land,

> is gradually and imperceptibly changed or shifted by accretion, reliction, or erosion, the margin or bed of the stream or body, as so changed, remains the boundary line of the tract, which is extended or restricted accordingly. The owner of the riparian land thus loses title to such portions as are so worn or washed away or encroached upon by the water. Thus the lots of the plaintiff were gradually worn away by the churning of the ocean on the shore and thereby lost. Its title was divested by "the sledge-hammering seas the inscrutable tides of God."

*Carolina Beach Fishing Pier, Inc. v. Town of Carolina Beach,* 277 N.C. 297, 304, 177 S.E.2d 513, 517 (1970) (citations omitted).

In *Adams Outdoor Advertising of Charlotte v. North Carolina Dept. of Transp.,* 112 N.C. App. 120, 434 S.E.2d 666 (1993), this Court

held that allegations of mere incidental or consequential interferences with property rights are insufficient to maintain an action for inverse condemnation. In *Adams*, a billboard owner sued the State for inverse condemnation, alleging that the State's planting of vegetation within its right-of-way adjacent to premises upon which plaintiff's billboards stood was a taking of the owner's property. This Court held that the plaintiff's action was properly dismissed pursuant to Rule 12(b)(6), stating,

> A plaintiff must show an actual interference with or disturbance of property rights resulting in injuries which are not merely consequential or incidental.

> While Black's Law Dictionary does not define the word consequential, it does define the term consequential damages, and from this definition, we may determine what the Supreme Court meant when it wrote of "injuries which are not merely consequential." Consequential damages means "[s]uch damage, loss or injury as does not flow directly and immediately from the act of the party, but only from some of the consequences or results of such act." Black's Law Dictionary 390 (6th ed. 1990). Black's Law Dictionary defines incidental as "[d]epending upon or appertaining to something else as primary; something necessary, appertaining to, or depending upon another which is termed the principal; something incidental to the main purpose." Black's Law Dictionary 762. Using these definitions, we conclude that plaintiff's complaint fails to state a claim of inverse condemnation.

> . . .

> Defendant's planting of trees as part of its beautification project was defendant's primary act, of which the obscuring of plaintiff's billboards was only a consequential or incidental result. Moreover, we note that defendant's use of its right-of-way to plant trees is consistent with its statutory powers.

*Id.* at 122-23, 434 S.E.2d at 667-68 (citing *Long v. City of Charlotte*, 306 N.C. 187, 199, 293 S.E.2d 101, 109 (1982)).

Similarly, in the present case, plaintiffs' complaint does not allege that the migration of Mason's Inlet and the resulting erosion of plaintiffs' property have been caused by any regulatory action taken by defendants, and these naturally occurring phenomena are the primary causes of any loss sustained by plaintiffs. Defendants' consistent enforcement of the hardened structure rules, consistent with its

statutory powers, is merely incidental to these naturally occurring events. Plaintiffs' complaint fails to allege any right supported by law to construct a hardened erosion control structure in an area designated by statute as one of environmental concern, nor does it allege that plaintiffs have lost all economically beneficial or productive use of their property; rather, plaintiffs have merely asserted that they have "experienced a significant reduction in use/value of the Hotel," which is insufficient to support a takings claim. *See, e.g., JWL Investments, Inc. v. Guilford County Board of Adjustment,* 133 N.C. App. 426, 515 S.E.2d 715 (1999) (quoting *Guilford Co. Dept. of Emer. Serv. v. Seaboard Chemical Corp.,* 114 N.C. App. 1, 11-12, 441 S.E.2d 177, 183, *disc. review denied,* 336 N.C. 604, 447 S.E.2d 390 (1994)) ("An interference with property rights amounts to a taking where the plaintiffs are deprived of 'all economically beneficial or productive use.'"); *Williams v. Town of Spencer,* 129 N.C. App. 828, 832, 500 S.E.2d 473, 475 (1998) (no taking where "petitioners are not deprived of 'all economically beneficial or productive use' of their land as it can be used for any of the uses allowed in an industrial zoned area."). Plaintiffs' takings claim therefore cannot survive a Rule 12(b)(6) motion.

In addition, plaintiffs' complaint specifically alleges that the hardened structure rules which they challenge were adopted in 1982, three years prior to issuance of the original CAMA permit for construction of the Shell Island Resort. The hardened structure rules were contained in the very regulatory scheme under which the original permit was issued, and the land upon which the hotel was constructed was subject to the restrictions at the time the permit was issued.

In *Bryant v. Hogarth, supra,* owners of an exclusive franchise to cultivate shellfish in a submerged tract of land sought a declaration that the Marine Fisheries Division's ("MFD") designation of the tract as a primary nursery area ("PNA"), and refusal to allow use of mechanical harvesting therein rendered their interest in the tract worthless, constituting a regulatory taking. This Court stated,

plaintiffs' franchise was not acquired free of government regulation. See *State v. Sermons,* 169 N.C. 285, 287, 84 S.E. 337, 338 (1915) (shellfish come well within police power of State and "are subject to rules and regulations reasonably designed to protect them and promote their increase and growth"). Indeed, the very statute granting the franchise to plaintiffs' predecessor in interest

also gave the shellfish commissioners exclusive jurisdiction and control over shell-fisheries covered by the legislation.

In addition, we note the tract was designated a PNA 1 November 1977 and that the administrative rules prohibiting mechanical harvesting of shellfish in such waters were adopted the same date. Plaintiffs' deed for purchase of the franchise was filed 25 August 1982, more than five years later. *Accordingly, plaintiffs' complaint failed to allege a claim of compensable taking under G.S. § 113-206(e) in consequence of the tract being subject to the challenged PNA restriction at the time of acquisition.* See *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1029, 112 S.Ct. 2886, 2900, 120 L.Ed.2d 798, 821 (1992) (existing regulation distinguished from future regulation for purposes of a "taking"; "newly legislated or decreed" regulation which prohibits all economically beneficial use of land without compensation constitutes a taking, but latter does not occur and no compensation required when one is barred by rules existing at time title to property acquired); see also *Hughes v. North Carolina State Hwy. Comm.*, 275 N.C. 121, 130, 165 S.E.2d 321, 327 (1969) (purchaser with notice is chargeable with knowledge he would have acquired had he exercised ordinary care to ascertain truth concerning matters affecting his property interest).

. . .

Because plaintiffs have not exhausted nor properly pled justifiable avoidance of the legislatively established administrative remedies for denial of permit applications, they may not in the instant separate action mount a collateral attack by claiming such denial constituted a taking of the franchise . . . .

127 N.C. App. at 84-87, 488 S.E.2d at 272-73 (emphasis added). Similarly, in this case, because plaintiff's tract was subject to the challenged restrictions at the time the original permit was issued and the hotel was constructed, there can be no claim of compensable taking by reason of the regulations. *Id.*; *see also, Lucas v. South Carolina Coastal Council*, at 1027, 120 L.Ed.2d at 820 ("Where the State seeks to sustain regulation that deprives land of all economically beneficial use, we think it may resist compensation only if the logically antecedent inquiry into the nature of the owner's estate shows that the proscribed use interests were not part of his title to begin with."); *Adams Outdoor Advertising of Charlotte* at 123-24, 434 S.E.2d at 668 (takings claim based on obstruction of view of

plaintiff's billboards due to vegetation planted by DOT for highway beautification project properly dismissed on 12(b)(6) where "statute [authorizing DOT to plant vegetation] was enacted prior to 1981, when plaintiff's predecessors in interest first entered into agreements for the lease of the property at issue. Therefore, plaintiff was charged with notice at the time it erected the billboards that DOT might plant trees and shrubs in the right-of-way near its leased premises.").

Because plaintiffs have failed to state a viable claim for relief for a regulatory taking, their Second claim for relief alleging an inverse condemnation of their property also necessarily fails. *See Adams Outdoor Advertising of Charlotte* at 122, 434 S.E.2d at 667 (citing *Advertising Co. v. City of Charlotte*, 50 N.C. App. 150, 153-54, 272 S.E.2d 920, 922 (1980)) ("An action in inverse condemnation must show (1) a taking (2) of private property (3) for a public use or purpose.").

[3] Moreover, even assuming *arguendo* that plaintiffs had the ability to challenge the hardened structure rules on equal protection and due process grounds, the allegations in plaintiffs' complaint nevertheless fail to state a claim upon which relief can be granted. In *Town of Beech Mountain v. Watauga County*, 91 N.C. App. 87, 370 S.E.2d 453 (1988), *affirmed*, 324 N.C. 409, 378 S.E.2d 780, *cert. denied*, 493 U.S. 954, 107 L.Ed.2d 351 (1989), this Court upheld a Rule 12(b)(6) dismissal of an equal protection claim where, on the face of the complaint, the challenged statute bore a rational basis to a legitimate government interest. We stated:

> The Equal Protection Clause is not violated merely because a statute classifies similarly situated persons differently, so long as there is a reasonable basis for the distinction. When a statute is challenged on equal protection grounds, it is subjected to a two-tiered analysis. The first tier, or "strict scrutiny" provides the highest level of review and is employed only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class. To survive this level of review, the government must demonstrate that the classification created by statute is necessary to promote a compelling government interest. A class is suspect "when it is saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command particular consideration from the judiciary." If a statute does not burden the exercise of a

SHELL ISLAND HOMEOWNERS ASS'N v. TOMLINSON

[134 N.C. App. 217 (1999)]

fundamental right or operate to the peculiar disadvantage of a suspect class, the statute is analyzed under the second tier and the government need only show that the classification in the challenged statute has some rational basis. A statute survives analysis under this level if it bears some rational relationship to a conceivable, legitimate interest of government. Statutes subject to this level of review come before the Court with a presumption of constitutionality.

*Id.* at 90-91, 370 S.E.2d at 454-55 (citations omitted).

Here, plaintiffs have not alleged their classification in any suspect class such as race, religion, or alienage, nor have they alleged that the hardened structure rules discriminate on such a basis. Furthermore, plaintiffs have not alleged that the rules burden any recognized fundamental personal right, and we discern none from the allegations of the complaint. Thus, in reviewing whether plaintiffs have stated an equal protection claim upon which relief may be granted, we must determine whether the hardened structure rules have a "rational relationship to a conceivable, legitimate interest of government," reviewed under a presumption of constitutionality. We hold that they do; the protection of lands of environmental concern is a conceivable and legitimate government interest, as is the preservation of value and enjoyment of adjacent properties and the need for the public to have access and use of the State's ocean beaches. The hardened structure rules, which prevent permanent structures from being erected in environmentally sensitive areas which may adversely impact the value of the land and adjacent properties, as well as the right to public enjoyment of such areas are clearly rationally related to the legitimate government end.

[5] Plaintiffs' allegations that the hardened structure rules "deprive the Plaintiff of property without procedural and substantive due process of law" also fail to state a claim upon which relief can be granted. As earlier noted, plaintiffs have shown no established right to construct hardened structures in areas of environmental concern, thus, they have failed to plead a legally cognizable right to support a claim of due process. In addition, the allegations of the complaint detail the administrative process through which plaintiffs have been provided an ample opportunity to be heard and to seek review of defendants' permit and variance application decisions.

For the foregoing reasons, we affirm the dismissal of the First, Second, Fourth, Sixth, and Seventh claims for relief alleged in plain-

tiffs' complaint for their failure to state claims upon which relief can be granted. N.C. Gen. Stat. § 1A-1, Rule 12(b)(6). It follows that plaintiffs' Twelfth claim for relief, for damages by reason of the matters alleged in the other claims, was also appropriately dismissed.

### III.

We have considered plaintiffs' remaining assignments of error which are directed to the denial of their motion to amend their complaint to add three additional claims for relief, and we find no merit to their argument. Such motions are addressed to the sound discretion of the trial court, and plaintiffs have shown no abuse of such discretion. *See Members Interior Construction, Inc. v. Leader Construction Co., Inc.*, 124 N.C. App. 121, 124, 476 S.E.2d 399, 402 (1996), *disc. review denied*, 345 N.C. 754, 485 S.E.2d 56 (1997) (motion to amend within sound discretion of trial court; "denial of such a motion will not be disturbed on appeal absent a clear showing that the trial court abused its discretion.").

The order dismissing plaintiffs' complaint is affirmed.

Affirmed.

Judges GREENE and WYNN concur.