IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA15-1197

Filed: 18 October 2016

Wake County, No. 14 CVS 635

ABRONS FAMILY PRACTICE AND URGENT CARE, PA; NASH OB-GYN
ASSOCIATES, PA; HIGHLAND OBSTETRICAL-GYNECOLOGICAL CLINIC, PA;
CHILDREN'S HEALTH OF CAROLINA, PA; CAPITAL NEPHROLOGY
ASSOCIATES, PA; HICKORY ALLERGY & ASTHMA CLINIC, PA; HALIFAX
MEDICAL SPECIALISTS, PA; and WESTSIDE OB-GYN CENTER, PA; Individually
and on Behalf of All Others Similarly Situated, Plaintiffs,

v.

NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES, and
COMPUTER SCIENCES CORPORATION, Defendants.


Appeal by plaintiffs from order entered 12 June 2015 by Judge Gregory P.

McGuire in Wake County Superior Court. Heard in the Court of Appeals 9 June 2016.


*Williams Mullen, by Camden R. Webb, Elizabeth C. Stone, and Mark S.
Thomas, for plaintiffs-appellants.*

*Attorney General Roy Cooper, by Special Deputy Attorney General Olga
Vysotskaya de Brito and Special Deputy Attorney General Amar Majmundar,
for defendant-appellee North Carolina Department of Health and Human
Services.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Jennifer K. Van
Zant, Charles F. Marshall, III, and Bryan Starrett, and Baker Botts L.L.P., by
Bryan C. Boren, Jr., Van H. Beckwith, and Ryan L. Bangert, for defendant-
appellee Computer Sciences Corporation.*


ZACHARY, Judge.

ABRONS FAM. PRAC. & URGENT CARE, PA v. NC DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

Abrons Family Practice and Urgent Care, PA; Nash OB-GYN Associates, PA; Highland Obstetrical-Gynecological Clinic, PA; Children's Health of Carolina, PA; Capital Nephrology Associates, PA; Hickory Allergy & Asthma Clinic, PA; Halifax Medical Specialists, PA; and Westside OB-GYN Center, PA ("plaintiffs") appeal from an order of the trial court granting a motion of the North Carolina Department of Health and Human Services ("DHHS") and Computer Sciences Corporation ("CSC") (collectively "defendants") to dismiss plaintiffs' complaint for lack of subject matter jurisdiction. For the reasons stated below, we reverse the order of the trial court.

## I. Factual and Procedural Background

"Medicaid is a federal program that subsidizes the States' provision of medical services to . . . 'individuals, whose income and resources are insufficient to meet the costs of necessary medical services.' [42 U.S.C.A.] §1396-1." *Armstrong v. Exceptional Child Ctr., Inc.*, __ U.S. __, __, 191 L. Ed. 2d 471, 476 (2015). Plaintiffs are medical practices in North Carolina that provide care to Medicaid-eligible patients and that have Medicaid contracts with the State of North Carolina. DHHS is an administrative agency of the State of North Carolina and is the single state agency designated to administer and operate the North Carolina Medicaid plan. CSC is a Nevada corporation, with its principal office in Falls Church, Virginia.

In 2003, the federal Centers for Medicare and Medicaid Services ("CMS") required the State of North Carolina to replace its Medicaid Management

ABRONS FAM. PRAC. & URGENT CARE, PA V. NC DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

Information System ("MMIS"). In December 2008, the State awarded the MMIS contract to CSC. The contract required CSC to design and operate a new MMIS system. The new system, NCTracks, was implemented on 1 July 2013, and was intended to manage the enrollment of medical, dental, and other health care providers (hereafter "providers") and to process claims by providers for payment for services provided to North Carolina Medicaid recipients.

On 21 January 2014, plaintiffs filed a "First Amended Class Action Complaint" on behalf of themselves and all others similarly situated against defendants. Plaintiffs' complaint also named SLI Global Solutions, Inc. (SLI) as a defendant; however, SLI is not a party to this appeal. Plaintiffs alleged that the implementation of NCTracks had been a "disaster, inflicting millions of dollars in damages upon North Carolina's Medicaid providers." Plaintiffs asserted that CSC had breached its duty to develop software that complied with Medicaid reimbursement rules, allowed providers to enroll as Medicaid providers, and that processed and paid providers' claims, and had also been negligent in its design and implementation of NCTracks. Plaintiffs sought damages based on claims of negligence and unfair and deceptive trade practices ("UDTP") against CSC and SLI; and breach of contract and violations of Art. I, § 19 of the North Carolina Constitution against DHHS. Plaintiffs also sought a declaratory judgment that DHHS was in violation of the Medicaid reimbursement rules. In their complaint, plaintiffs alleged that it would be futile or impossible for

ABRONS FAM. PRAC. & URGENT CARE, PA V. NC DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

them to attempt to exhaust the available administrative remedies for a variety of reasons, including the following:

> DHHS and CSC have also placed thousands of reimbursement claims in "limbo" by failing to issue decisions on reimbursement claims. The providers have been informed by DHHS and CSC that they must resubmit the claims, and providers' claims have been resubmitted as many as a dozen times, with no reimbursement and no final determination that the amount is or is not payable. The providers therefore have no administrative remedies available to them for such claims because they have no agency decision from which to appeal.

This matter was subsequently "designated a mandatory complex business case by Order of the Chief Justice of the North Carolina Supreme Court[.]" On 4 April 2014, DHHS and CSC each filed a motion to dismiss pursuant to Rule 12(b)(1), 12(b)(2), and 12(b)(6) of the North Carolina Rules of Civil Procedure. Following a hearing held on 15 April 2015, the trial court entered an "Amended Opinion and Order on Motions to Dismiss" on 12 June 2015. The trial court ruled that plaintiffs' "primary claim" was for unpaid Medicaid claims and that plaintiffs had failed to exhaust the available administrative remedies prior to filing their complaint. The court dismissed plaintiffs' complaint pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(1) (2015) for lack of subject matter jurisdiction, based upon plaintiffs' failure to exhaust the available administrative remedies prior to filing suit. The court dismissed as moot defendants' motions for dismissal pursuant to N.C. Gen. Stat. § 1A-1 Rule 12(b)(2) and 12(b)(6). Plaintiffs noted an appeal to this Court.

ABRONS FAM. PRAC. & URGENT CARE, PA v. NC DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

## II.  Standard of Review

Our Court "review[s] Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction *de novo* and may consider matters outside the pleadings."  *Harris v. Matthews*, 361 N.C. 265, 271, 643 S.E.2d 566, 570 (2007) (citations omitted).

## III.  Discussion

### A.  Introduction

The issue raised by this appeal is whether the trial court correctly determined that plaintiffs failed to show that it would have been futile or impossible for them to attempt to exhaust administrative remedies prior to filing suit.  On appeal, plaintiffs argue that DHHS has a legal obligation to render a final decision on each Medicaid claim that it denies, to inform the provider of its final decision, and to notify the provider of the provider's right to seek a contested case hearing.  Plaintiffs contend that "[a]t no time do DHHS or CSC issue a final decision on any claims" and assert that a provider  cannot initiate the process of exhausting its administrative remedy until DHHS issues a final decision from which the provider can appeal.  We conclude that plaintiffs' arguments on this issue have merit and that the trial court erred in its analysis of the issue of exhaustion of administrative remedies.

### B.  Exhaustion of Administrative Remedies: General Rule

Judicial review of the final decision of a State agency is governed by the Administrative Procedure Act (APA), N.C. Gen. Stat. § 150B-1 *et seq*., which applies

ABRONS FAM. PRAC. & URGENT CARE, PA V. NC DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

to "both trial and appellate court review of administrative agency decisions." *N. C. Dept. of Correction v. Myers*, 120 N.C. App. 437, 440, 462 S.E.2d 824, 826 (1995). N.C. Gen. Stat. § 150B-43 (2015) states in relevant part that "[a]ny party or person aggrieved by the final decision in a contested case, and who has exhausted all administrative remedies made available to the party or person aggrieved by statute or agency rule, is entitled to judicial review of the decision under this Article[.]" "An action is properly dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction where the plaintiff has failed to exhaust administrative remedies." *Johnson v. Univ. of N.C.*, 202 N.C. App. 355, 357, 688 S.E.2d 546, 548 (2010) (internal quotations omitted). "[T]he exhaustion requirement may be excused if the administrative remedy would be futile or inadequate." *Justice for Animals, Inc. v. Robeson Cty.*, 164 N.C. App. 366, 372, 595 S.E.2d 773, 777 (2004) (citing *Huang v. N.C. State University*, 107 N.C. App. 710, 715, 421 S.E.2d 812, 815 (1992)).

N.C. Gen. Stat. § 150B-22 (2015) sets out the general policy for resolution of disputes between a State agency and another party:

> It is the policy of this State that any dispute between an agency and another person that involves the person's rights, duties, or privileges . . . should be settled through informal procedures. In trying to reach a settlement through informal procedures, the agency may not conduct a proceeding at which sworn testimony is taken and witnesses may be cross-examined. If the agency and the other person do not agree to a resolution of the dispute through informal procedures, either the agency or the person may commence an administrative proceeding to

ABRONS FAM. PRAC. & URGENT CARE, PA v. NC DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

determine the person's rights, duties, or privileges, at which time the dispute becomes a "contested case."

The APA applies to appeals by a Medicaid provider. N.C. Gen. Stat. § 108C-12 (2015) states that:

> (a) General Rule. Notwithstanding any provision of State law or rules to the contrary, this section shall govern the process used by a Medicaid provider or applicant to appeal an adverse determination made by the Department.
>
> (b) Appeals. Except as provided by this section, a request for a hearing to appeal an adverse determination of the Department under this section is a contested case subject to the provisions of Article 3 of Chapter 150B of the General Statutes.

Thus, pursuant to N.C. Gen. Stat. § 108C-12, a contested case hearing is the administrative remedy that a provider must pursue before filing a civil suit. N.C. Gen. Stat. § 108C-2(1) defines an "adverse determination" as "[a] final decision by the Department to deny, terminate, suspend, reduce, or recoup a Medicaid payment[.]" N.C. Gen. Stat. § 150B-23(a) (2015) provides that a "contested case shall be commenced by . . . filing a petition with the Office of Administrative Hearings[.]" The time within which a party may petition for a contested case hearing is limited by N.C. Gen. Stat. § 150B-23(f), which provides in relevant part that:

> (f) Unless another statute or a federal statute or regulation sets a time limitation for the filing of a petition in contested cases against a specified agency, the general limitation for the filing of a petition in a contested case is 60 days. The time limitation, whether established by another statute, federal statute, or federal regulation, or this section, shall

ABRONS FAM. PRAC. & URGENT CARE, PA v. NC DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

> commence when notice is given of the agency decision to all persons aggrieved who are known to the agency[.] . . . The notice shall be in writing, and shall set forth the agency action, and shall inform the persons of the right, the procedure, and the time limit to file a contested case petition. . . . .

An appellant's compliance with the time limit of N.C. Gen. Stat. § 150B-23(f) is a jurisdictional requirement. "In order for the OAH to have jurisdiction over [a] petitioner's appeal . . . [a] petitioner is required to follow the statutory requirements . . . for commencing a contested case." *Nailing v. UNC-CH*, 117 N.C. App. 318, 324, 451 S.E.2d 351, 355 (1994). Thus, "timely filing of a petition is necessary to confer subject matter jurisdiction on the agencies as well as the courts[.]" *Gray v. N.C. Dep't of Env't, Health & Nat. Res.*, 149 N.C. App. 374, 378, 560 S.E.2d 394, 397 (2002).

In sum, the general rule, upon which the trial court and the parties are in apparent agreement, is as follows:

> 1. The APA applies to a provider who wants to challenge DHHS' denial of a claim for Medicaid payment.
>
> 2. Under the APA, a provider must exhaust administrative remedies, in this case by pursuing a contested case hearing, prior to filing a claim in superior court, unless the administrative remedy is inadequate or pursuing the remedy would be futile.
>
> 3. In order to pursue a contested case hearing, a provider must file a petition for a contested case hearing within 60 days of receiving notice, in writing, of DHHS' adverse determination of the provider's claim. An adverse determination is DHHS' final decision to "deny . . . a Medicaid payment" to a provider.

ABRONS FAM. PRAC. & URGENT CARE, PA v. NC DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

## C.  Administrative Appeal Process

Plaintiffs assert that, in response to the submission by a provider of a claim for a Medicaid payment, DHHS neither makes a final agency decision regarding the claim nor provides the notice of such decision required under N.C. Gen. Stat. § 150B-23(f).  Plaintiffs argue that without a final agency decision from which to appeal, it is impossible for them to pursue a hearing before the OAH.  Evaluation of the merits of plaintiffs' argument requires a review of the document issued by DHHS.

The parties agree that when a provider submits a claim for reimbursement, DHHS responds by sending the provider a document known as a Remittance Statement. The Remittance Statement notifies the provider of DHHS' initial disposition of the provider's claim.  Claims are either paid, denied, or placed in "pending" status. In its appellee's brief, CSC describes the contents and legal significance of the Remittance Statement as follows:

> When faced with a denial of a reimbursement claim for Medicaid-covered services, a provider seeking relief may choose to do one of two things: (1) resubmit the claim, generally with new or updated information or (2) seek administrative review with the North Carolina Division of Medicaid Assistance ("DMA"). 10A NCAC 22J .0102(a). If the reconsideration review process proves unsuccessful, a provider may initiate a contested case proceeding before the Office of Administrative Hearings ("OAH"). . . . A provider's option to pursue resubmission or administrative remedies is triggered by the provider's receipt of a Remittance Statement. A Remittance Statement notifies a

ABRONS FAM. PRAC. & URGENT CARE, PA v. NC DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

provider whether reimbursement claims have been approved and paid, denied, or placed in pending status.

The reconsideration review is an informal review process. Several provisions of the North Carolina Administrative Code (NCAC) that are cited by the trial court and by defendants address a provider's right to seek a reconsideration review:

1. 10A NCAC 22J .0101.

> The purpose of these regulations is to specify the rights of providers to appeal reimbursement rates, payment denials, disallowances, payment adjustments and cost settlement disallowances and adjustments. . . .

2. 10A NCAC 22J .0102.

> (a) A provider may request a reconsideration review within 30 calendar days from receipt of final notification of . . . payment denial[.] . . . Final notification of . . . payment denial . . . means that all administrative actions necessary to have a claim paid correctly have been taken by the provider and DMA or the fiscal agent has issued a final adjudication. If no request is received within . . . [the 30] day period[], the state agency's action shall become final. . . .

> . . .

3. 10A NCAC 22J .0104.

> If the provider disagrees with the reconsideration review decision he may request a contested case hearing[.]

It is undisputed that if a provider does not seek a reconsideration review within

ABRONS FAM. PRAC. & URGENT CARE, PA v. NC DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

30 days of receiving the Remittance Statement, the interim decision stated in the Remittance Statement "shall become final." In the alternative, a provider may resubmit a denied claim to DHHS at any time within 18 months of receiving the Remittance Statement. The parties disagree sharply on the role played by the Remittance Statement in the appeals process and on whether the trial court properly concluded that the Remittance Statement met the definition of a final notice of an adverse determination by DHHS that is required by N.C. Gen. Stat. § 150B-23(f).

### D. Remittance Statement

After a careful review of the record, briefs, and applicable law, we reach the following conclusions about the nature of the administrative remedy that plaintiffs must pursue before filing a claim in superior court, and about the role played by the Remittance Statement in the procedures with which a provider must comply in order to seek an administrative remedy for the denial of a Medicaid claim.

1. The administrative remedy that plaintiffs are required to exhaust prior to filing suit in superior court is a contested case hearing, there being no legal requirement that plaintiffs must pursue a reconsideration review before filing a petition for a contested case hearing.

N.C. Gen. Stat. § 150B-22 states that it is the policy of the State that disputes between an agency and a party should be resolved through informal means. However, neither § 150B-22 nor any other statute or regulation *requires* that a provider pursue the informal remedy of a reconsideration review. Moreover, 10A NCAC 22J .0102 expressly states that if a provider does not request a reconsideration review within

ABRONS FAM. PRAC. & URGENT CARE, PA V. NC DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

30 days of receiving a Remittance Statement, "the state agency's action shall become final." Thus, the pertinent NCAC regulation clearly anticipates that a provider may choose not to pursue a reconsideration review.

2. DHHS is the only entity that has the authority to render a final decision on a contested Medicaid claim. It is DHHS' responsibility to make the final decision and to furnish the provider with written notification of the decision and of the provider's appeal rights, as required by N.C. Gen. Stat. § 150B-23(f).

The issue addressed by the trial court in its order was whether plaintiffs had demonstrated that it would have been futile or impossible for them to seek the available administrative remedy of a contested case hearing. A provider cannot apply for a contested case hearing, however, until after (1) DHHS reaches its *final decision* on a given claim for Medicaid reimbursement, and (2) DHHS supplies the provider with written notice of its *final decision* and of the provider's appeal rights. The OAH does not obtain subject matter jurisdiction over a dispute between DHHS and a provider until the provider files a petition for a contested case hearing to review the agency's *final decision*. DHHS is the only entity involved in this matter that has the authority to reach a final decision.

The relevant statutes and NCAC regulations set out a clear schedule with deadlines that have been strictly enforced. N.C. Gen. Stat. § 150B-23(f) requires that when DHHS makes an adverse determination on a Medicaid claim, it must issue a notification to the provider that "shall be in writing, and shall set forth the agency

ABRONS FAM. PRAC. & URGENT CARE, PA V. NC DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

action, and shall inform the persons of the right, the procedure, and the time limit to file a contested case petition." The 60-day deadline within which a provider must petition for a contested case hearing is triggered by the provider's receipt of the required notice of the final decision.

As a result, it is clear that a provider initiates the process of seeking an administrative remedy for a denied Medicaid claim by filing a petition seeking a contested case hearing, and that the petition is the starting point for the provider's exhaustion of administrative remedies. There is no logical or legal basis to justify grafting onto the statutory scheme a requirement imposing upon providers a new, preliminary legal obligation to remind or "nudge" DHHS into complying with its duty to render a final decision in a timely manner and to communicate its final decision to providers.

3. The presence or absence of language stating that a document is the "final notice" of DHHS' "adverse determination" is not determinative of whether the contents of the document meet the requirements of N.C. Gen. Stat. § 150B-23(f).

There is no statutory or regulatory requirement that the written notice that an agency supplies to providers pursuant to N.C. Gen. Stat. § 150B-23(f) must bear the heading "Final Notice" or similar language. The proper inquiry is not whether the document declares itself to be the notice of a final agency decision, but whether its content establishes that it is in fact such a notice.

ABRONS FAM. PRAC. & URGENT CARE, PA V. NC DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

For example, in *Glorioso v. F.B.I.*, 901 F.Supp.2d 359, 362 (E.D.N.Y. 2012), the plaintiff received a letter from a federal agency stating that "if you are dissatisfied with our decision, suit may be filed against the United States in an appropriate United States District Court, not later than six (6) months after the date of this letter."  On appeal, the Court held that the letter "unequivocally informs plaintiff that, if he is dissatisfied . . . he should file suit in federal court within six months" and that "[e]ven though the letter does not include the words 'final denial,' the letter constituted notice of a final denial of the plaintiff's claim." Similarly, in *W. M. Schlosser Co. v. Fairfax County*, 17 Va. Cir. 246 (1989), the Circuit Court reviewed the appeal of a contractor attempting to pursue litigation of a contract dispute with Fairfax County, Virginia. The plaintiff conceded that he was required to appeal within six months of the County's final decision, but contended that the letter he had received was not a "final decision." Plaintiff's argument was rejected:

> First, Plaintiff claims that the April 14, 1988, letter did not state on its face that it constituted the Director's final decision. The Court does not believe that the statutory scheme of the Virginia Public Procurement Act requires a public body to emblazon the words "FINAL DECISION" across the face of a letter decision to put a party on notice that the appeal period has begun to run. The Court believes that the content and character of the letter in question could leave no doubt in Plaintiff's mind that the letter embodied a final decision[.]

*W. M. Schlosser Co.*, 17 Va. Cir. at 247. In the instant case, however, the fact that the Remittance Statement does not expressly state that it is the notice of a "final agency

ABRONS FAM. PRAC. & URGENT CARE, PA v. NC DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

decision" of DHHS' "adverse determination" on a Medicaid claim does not resolve the question of whether the content of the Remittance Statement establishes that it constitutes notice of a final agency decision.

4. The Remittance Statement informs a provider of DHHS' initial determination on a provider's Medicaid claim and gives a provider two options by which to challenge this initial decision. Given that DHHS' regulations expressly contemplate the possibility that DHHS may change its initial decision, the Remittance Statement cannot, as a matter of logic, itself constitute DHHS' final decision.

A provider may resubmit a denied claim within 18 months of receiving a Remittance Statement informing the provider that a claim has been denied. Defendants' Billing Guide includes detailed instructions for making suggested changes to a claim in order to correct errors in the original claim, and defendant CSC asserts in its appellee's brief that "the provider can often resolve the issue by resubmitting the claim with updated, corrected, or more complete information." Alternatively, a provider may submit a written request for an informal reconsideration review. In either case, DHHS may change its initial determination in response to the provider's argument or resubmission of the claim in dispute. Accordingly, the Remittance Statement sets forth a preliminary determination which is subject to subsequent revision. This being the case, the Remittance Statement itself cannot be DHHS' final decision on a Medicaid claim.

5. The provisions of 10A NCAC 22J .0102 are internally inconsistent and the two avenues for seeking review of a claim denial upon receipt of a Remittance Statement are legally and factually inconsistent.

ABRONS FAM. PRAC. & URGENT CARE, PA V. NC DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

10A NCAC 22J .0102(a) states in relevant part that:

> A provider may request a reconsideration review within 30 calendar days from receipt of final notification of . . . payment denial[.] . . . Final notification of payment [denial] . . . means that all administrative actions necessary to have a claim paid correctly have been taken by the provider and DMA or the fiscal agent has issued a final adjudication. If no request is received within the . . . [30] day period[], the state agency's action shall become final.

This regulation stipulates that a provider may seek a reconsideration review after receiving "final notification" of a DHHS action, but also that if the provider does not request a reconsideration review, then the action outlined in the Remittance Statement will at that time (30 days after the provider has received notice of the "final" decision) become final. These provisions are internally inconsistent and cannot both be accurate, because an agency decision cannot repeatedly become "final." In addition, the provider is given the option to resubmit a claim at any time within 18 months of receiving the Remittance Statement. These provisions are mutually exclusive and legally inconsistent. There is no logical way that a provider could resubmit a claim after 30 days, if the decision stated in the Remittance Statement has become final after 30 days.

6. DHHS' own procedures establish that DHHS makes its "adverse determination" or issues its "final agency action" after the earlier of (1) the expiration of 30 days after a provider's receipt of the Remittance Statement if the provider does not request a reconsideration review, at which point DHHS' initial determination becomes final, or (2) DHHS' decision about the provider's claim after a reconsideration review or

ABRONS FAM. PRAC. & URGENT CARE, PA v. NC DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

resubmission of the claim. Upon making its final decision, DHHS must supply the provider with written notice of its final decision, from which a provider may seek administrative review within 60 days of receiving the written notification specified in N.C. Gen. Stat. § 150B-23(f).

For the reasons discussed above, we conclude that the Remittance Statement cannot be construed to be DHHS' final decision or adverse determination of a Medicaid claim, if for no other reason than the fact that it is expressly subject to revision. Because the Remittance Statement is sent *before* DHHS makes its final agency decision, the Remittance Statement *cannot* constitute the notice of a final decision that is required by N.C. Gen. Stat. § 150B-23(f).

7. Some of the alleged defects in the procedure by which a provider may seek review of a denied Medicaid claim might be corrected with relatively simple changes to the regulatory language and practice.

Plaintiffs' complaint alleges an array of deficiencies in the process by which a provider may challenge the denial of a Medicaid claim. Some of the defects alleged by plaintiffs, such as problems with software, may prove difficult to resolve. Other assertions by plaintiffs, such as their allegation that Remittance Statement data is confusing, do not appear to be dispositive of the issue of plaintiffs' ability to pursue an administrative remedy. The APA, however, provides a straightforward path for review of final agency decisions. The following changes would clarify the procedures for appealing a Medicaid claim denial and bring DHHS into compliance with the APA:

> 1. The Remittance Statement, which informs providers of an interim determination that is expressly subject to

ABRONS FAM. PRAC. & URGENT CARE, PA v. NC DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

revision, should state that it is an interim or tentative decision.

2. A provider who wishes to appeal the decision stated in the Remittance Statement should be required to either seek a reconsideration review within 30 days or to inform DHHS of an intention to resubmit the claim, at which point DHHS could suspend the automatic finalization of the Remittance Statement decision after 30 days.

3. Upon the earlier of (1) the expiration of 30 days during which the provider neither seeks a reconsideration review nor informs DHHS of its intention to resubmit a claim, or (2) the conclusion of the reconsideration review and/or the resubmission process, DHHS should send the provider the written notice of its final agency decision and of the provider's right to seek a contested case hearing, as required by N.C. Gen. Stat. § 150B-23(f).

### D. Trial Court's Order

In its order, the trial court reviewed the law governing review of a final agency decision and made findings addressing plaintiffs' failure to exhaust administrative remedies and plaintiffs' contention that it would have been futile or impossible for them to do so. These findings, as relevant to the issues discussed herein, include the following:

. . .

32. Defendants contend that all of Plaintiffs' claims in this action could have been addressed and remedied through the relevant administrative procedures. These procedures provide, first, for "reconsideration review" within DHHS, followed by a contested case hearing before an administrative law judge at the Office of Administrative

- 18 -

ABRONS FAM. PRAC. & URGENT CARE, PA v. NC DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

Hearings. . . . Since Plaintiffs did not exhaust these administrative procedures, Defendants contend that their claims in this action must be dismissed.

33. The applicable regulations state that a "provider may request a reconsideration review within 30 calendar days from receipt of final notification of payment, payment denial, disallowances, payment adjustment, notice of program reimbursement. . . ." That section further states that "final notification . . . means that all administrative actions necessary to have a claim paid correctly have been taken by the provider and [the NC Division of Medicaid Assistance ('DMA'), a division of DHHS] or the fiscal agent has issued a final adjudication." *Id*. This process provides an opportunity for reconsideration review of any payment decision and states that "[i]f a provider disagrees with the reconsideration review decision he may request a contested case hearing." 10A NCAC 22J.0104.

. . .

36. Here, Plaintiffs admit that they did not exhaust the administrative remedies available under the DHHS regulations. . . . Instead, Plaintiffs allege that the administrative process would have been futile and inadequate to provide the relief they seek.

37. . . . Plaintiffs contend that DHHS, through its fiscal agent CSC, does not issue "final adjudications" or "final notices" that would trigger the reconsideration review and contested case processes and, consequently, Plaintiffs would be unable to obtain a "final agency decision" from which they might seek judicial review. . . .

38. Once Medicaid reimbursement claims have been submitted, providers receive Remittance Statements that notify them of Medicaid claims that have been paid and those that have been denied, and the amount for which the provider is being reimbursed for the claims submitted. . . . The Remittance Statements do not contain any language

- 19 -

ABRONS FAM. PRAC. & URGENT CARE, PA v. NC DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

indicating that they are "final notices" or "final adjudications" of the claims. The statements themselves do not reference an appeal procedure. . . .

. . .

41. The Court has reviewed the Remittance Statements, regulations, and Billing Guide and concludes that they create a very confusing and difficult process for providers to determine why claims have been denied and how to appeal denials. The Remittance Statements are difficult to decipher. They do not contain any language indicating that the claims decisions contained in the statements are "final" adjudications or qualify as "final notifications," within the regulatory language set forth above. [The] regulatory language does not specify what actions are included in the phrase "all administrative actions," leaving at least some question as to whether telephone calls to the AVR and CSC Provider Services to seek assistance are "administrative actions" required before a claims decision becomes a "final adjudication." Similarly, the provision in the Billing Guide regarding certain types of appeals being excluded from the reconsideration review process is also confusing.

42. Nevertheless, at this stage Plaintiffs have only speculated that the process would be futile. Again, none of the Plaintiffs or the affiants appear to have attempted to initiate an appeal. While the regulations and Billing Guide are confusing, the regulations expressly explain an appeal process that can be initiated by making "a request for reconsideration review" within 30 days to DMA at the division's address. Even if the Remittance Statements do not clearly state that they are a "final adjudication" of the claims, at some point common sense would suggest that a provider would at least attempt to follow the appeal procedure provided for in the regulations and the Billing Code, even if simply to get a determination as to whether the Remittance Statements constituted a final adjudication.

ABRONS FAM. PRAC. & URGENT CARE, PA V. NC DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

In its order the trial court erred in several respects. For the reasons set out above, the trial court erred by treating the Remittance Statement as the notice of a final agency decision that is required by N.C. Gen. Stat. § 150B-23(f). The trial court also erred in Findings Nos. 32 and 33 by including a reconsideration review as a *mandatory* step in the process by which a provider seeks to exhaust administrative remedies prior to filing suit. The Remittance Statement acknowledges that a provider may choose to forego the reconsideration review and resubmit a claim, or may allow the tentative determination stated in the Remittance Statement to become a final decision. In addition, the trial court made several reversible errors in Finding No. 42. The finding states that plaintiffs "have only speculated" that it would be futile for them to pursue an administrative remedy. To the contrary, plaintiffs assert that "at no time" does DHHS ever issue a final decision on a denied Medicaid claim. The trial court failed to address this issue or to determine the crucial question of fact regarding DHHS' compliance with N.C. Gen. Stat. § 150B-23(f). On remand, the trial court should make a finding as to whether DHHS ever makes a final agency decision on Medicaid claims and whether DHHS ever sends providers the notification that starts the 60-day limitation period. The trial court also erred in Finding No. 42 by suggesting that as part of exhausting administrative remedies, the plaintiffs are obligated to contact DHHS in order to urge it to comply with its own responsibilities and regulations. Finally, the court erred by ruling that plaintiffs were required to

ABRONS FAM. PRAC. & URGENT CARE, PA v. NC DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

seek administrative review, in this case a contested case hearing, *not* within 60 days of receiving the notification required by N.C. Gen. Stat. § 150B-23(f) but, instead, at an undefined time when "sooner or later" plaintiffs should be guided by "common sense" to seek review.

For the reasons discussed above, we conclude that the trial court erred by failing to resolve the crucial issues of fact as to whether DHHS issues final agency decisions in Medicaid claim matters and whether DHHS supplies providers with written notice of its final agency decisions, by treating the Remittance Statement as notice of a final agency decision, by including a reconsideration review as a mandatory administrative review, by suggesting that a provider has the legal duty to ensure that DHHS complies with its own obligations, and by substituting an imprecise and subjective standard for the statutory and regulatory deadlines that apply to review of a final agency decision. The trial court's order is reversed and remanded for entry of additional findings and conclusions that apply the legal principles discussed herein. The trial court may take additional evidence if necessary. Because we are reversing the trial court's order, we do not reach plaintiffs' other arguments.

REVERSED AND REMANDED.

Judge STEPHENS concurs.

Judge McCULLOUGH dissents by separate opinion.

No. COA15-1197– *Abrons Fam. Prac. & Urgent Care, PA v. NC Dep't of Health & Hum. Servs.*

McCULLOUGH, Judge, dissents.

I believe that the trial court properly granted defendants' motion to dismiss based on lack of subject matter jurisdiction. I must, therefore, respectfully dissent.

As the majority stated, "[a]n action is properly dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction where the plaintiff has failed to exhaust administrative remedies." *Shell Island Homeowners Ass'n v. Tomlinson*, 134 N.C. App. 217, 220, 517 S.E.2d 406, 410 (1999). It is well-established that "where the legislature has provided by statute an effective administrative remedy, that remedy is exclusive and its relief must be exhausted before recourse may be had to the courts." *Brooks v. Southern Nat'l Corp.*, 131 N.C. App. 80, 83, 505 S.E.2d 306, 308 (1998) (citation omitted).

In the present case, it is undisputed that the NCMMIS Provider Claims and Billing Assistance Guide ("Billing Guide"), available to all Medicaid-eligible care providers, summarizes the appeal procedure set forth in 10A N.C.A.C. 22J.0102-0105. The Billing Guide also states that appeals should be directed to the DMA Appeals Unit, Clinic Policy and Programs, and provides a mailing address located in Raleigh, North Carolina. The trial court found and agreed with plaintiffs that the Remittance Statements, regulations, and Billing Guide "create a very confusing and difficult process for providers to determine why claims have been denied and how to appeal denials."

However, none of the plaintiffs has attempted to initiate an appeal and has only speculated that the administrative process would be futile and inadequate. The trial court discussed, and plaintiffs do not challenge the validity of its discussion, that while the regulations and Billing Guide may be confusing, they

> expressly explain an appeal process that can be initiated by making "a request for reconsideration review" within 30 days to DMA at the division's address. Even if the Remittance Statements do not clearly state that they are a "final adjudications" of the claims, at some point common sense would suggest that a provider would at least attempt to follow the appeal procedure provided for in the regulations and the Billing Guide, even if simply to get a determination as to whether the Remittance Statements constituted a final adjudication.

In addition, the trial court found that the process for seeking review of Medicaid claims decisions "did not change with the implementation of NCTracks, but, rather, has apparently been in place for some time." I agree with the trial court's discussion, and thus, would reject plaintiffs' arguments that because DHHS failed to follow the procedures set forth in the North Carolina Administrative Code for reconsideration review, plaintiffs were excused from exhausting their administrative remedies. Our Court has made it clear that "futility cannot be established by plaintiffs' prediction or anticipation that [DHHS] would again rule adversely to plaintiffs' interests." *Affordable Care, Inc. v. N.C. State Bd. of Dental Examiners.*, 153 N.C. App. 527, 534, 571 S.E.2d 52, 58 (2002).

Furthermore, I agree with the trial court that plaintiffs failed to satisfy their burden of proving that the administrative remedies were inadequate to resolve their claims. Our Court has previously held that "[w]here the remedy established by the APA is inadequate, exhaustion is not required. The remedy is considered inadequate unless it is calculated to give relief more or less commensurate with the claim." *Shell Island*, 134 N.C. App. at 222-23, 517 S.E.2d at 411 (citations and quotation marks omitted).

In accordance with the reasoning set forth in *Jackson v. N.C. Dep't of Human Resources*, 131 N.C. App. 179, 505 S.E.2d 899 (1998), I believe that a thorough review of the record reveals that plaintiffs' primary claim is for unpaid Medicaid reimbursement claims. This is the exact type of claim that should be determined by DHHS' administrative procedures. As to plaintiffs' claims for breach of contract and a violation of the North Carolina Constitution instituted against DHHS, in which plaintiffs seek damages for the payment of improperly denied Medicaid reimbursement claims, I believe that DHHS' administrative review and appeal process could have given plaintiffs relief "more or less commensurate with [plaintiffs'] claim" and that the trial court did not err by dismissing these claims. As to plaintiffs' claim for a declaratory judgment that DHHS' payment methodology, effective 1 July 2013, violated Medicaid reimbursement rules, plaintiffs were required to first seek a declaratory ruling from DHHS before bringing a claim to the courts. N.C. Gen.

Stat. § 150B-4 provides a method for a party in plaintiffs' position seeking a declaratory ruling with the agency:

> On request of a person aggrieved, an agency shall issue a declaratory ruling as to the validity of a rule or as to the applicability to a given state of facts of a statute administered by the agency or of a rule or order of the agency. Upon request, an agency shall also issue a declaratory ruling to resolve a conflict or inconsistency within the agency regarding an interpretation of the law or a rule adopted by the agency.

N.C. Gen. Stat. § 150B-4(a) (2015). Finally, as to plaintiffs' claims of negligence and UDTP against CSC, a review of plaintiffs' amended complaint demonstrates that plaintiffs seek reimbursement for Medicaid claims that were improperly denied because of CSC's alleged negligent design, implementation, and administration of NCTracks and for related business damages resulting from the improperly denied claims. The administrative remedies available to plaintiffs could have provided plaintiffs relief more or less commensurate with plaintiffs' claims. Accordingly, I believe that plaintiffs are not relieved from the requirement that they exhaust available administrative remedies before resorting to the courts.

Based on the foregoing reasons, I would affirm the 12 June 2015 order of the trial court, dismissing plaintiffs' complaint for lack of subject matter jurisdiction.