IN THE SUPREME COURT OF NORTH CAROLINA

No. 427A16

Filed 2 March 2018

ABRONS FAMILY PRACTICE AND URGENT CARE, PA; NASH OB-GYN
ASSOCIATES, PA; HIGHLAND OBSTETRICAL-GYNECOLOGICAL CLINIC,
PA; CHILDREN'S HEALTH OF CAROLINA, PA; CAPITAL NEPHROLOGY
ASSOCIATES, PA; HICKORY ALLERGY & ASTHMA CLINIC, PA; HALIFAX
MEDICAL SPECIALISTS, PA; and WESTSIDE OB-GYN CENTER, PA,
Individually and on Behalf of All Others Similarly Situated

v.

NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES and
COMPUTER SCIENCES CORPORATION

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of

the Court of Appeals, ___ N.C. App. ___, 792 S.E.2d 528 (2016), reversing an order

dated 12 June 2015 by Judge Gregory P. McGuire, Special Superior Court Judge for

Complex Business Cases, in Superior Court, Wake County, and remanding for

additional proceedings. On 26 January 2017, the Supreme Court allowed both

defendants' petitions for discretionary review of additional issues. Heard in the

Supreme Court on 12 December 2017.

*Williams Mullen, by Camden R. Webb, Elizabeth C. Stone, and Ruth A. Levy, for plaintiff-appellees.*

*Joshua H. Stein, Attorney General, by Olga Vysotskaya de Brito and Amar Majmundar, Special Deputy Attorneys General, for defendant-appellant North Carolina Department of Health and Human Services.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, LLP, by Charles F. Marshall III and Jennifer K. Van Zant, for defendant-appellant Computer Sciences Corporation.*

ABRONS FAM. PRAC. & URGENT CARE, P.A. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

> *Parker Poe Adams & Bernstein LLP, by Matthew W. Wolfe, for American Medical Association, North Carolina Academy of Family Physicians, North Carolina Hospital Association, North Carolina Health Care Facilities Association, and North Carolina Medical Society, amici curiae.*

> *Ott Cone & Redpath, P.A., by Matthew Jordan Cochran, Thomas E. Cone, Curtis B. Venable, and Stephen J. White, for Charlotte−Mecklenburg Hospital Authority, Duke University Medical Center, Mission Hospitals, Inc., The Moses H. Cone Memorial Hospital Operating Corporation, North Carolina Baptist Hospital, and WakeMed, amici curiae.*

JACKSON, Justice.

In this appeal we consider whether the Court of Appeals correctly held that the trial court erroneously dismissed plaintiffs' action for lack of subject-matter jurisdiction due to plaintiffs' failure to exhaust administrative remedies in seeking damages for denied Medicaid reimbursement claims. Because we conclude that plaintiffs have failed to exhaust their available administrative remedies, we reverse the decision of the Court of Appeals reversing the trial court's order granting defendants' motions to dismiss for lack of subject-matter jurisdiction.

Plaintiffs Abrons Family Practice and Urgent Care, PA; Nash OB-GYN Associates, PA; Highland Obstetrical-Gynecological Clinic, PA; Children's Health of Carolina, PA; Capital Nephrology Associates, PA; Hickory Allergy & Asthma Clinic, PA; Halifax Medical Specialists, PA; and Westside OB-GYN Center, PA are medical practices in North Carolina, all of which provide care to Medicaid-eligible patients pursuant to Medicaid contracts with the State of North Carolina. Defendant North

ABRONS FAM. PRAC. & URGENT CARE, P.A. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

Carolina Department of Health and Human Services (DHHS or the Department) administers the State's Medicaid plan. Defendant Computer Sciences Corporation (CSC) is a Nevada corporation with its principal office in Falls Church, Virginia. After being required by the federal Centers for Medicare and Medicaid Services (CMS) to replace its Medicaid Management Information System (MMIS), the State of North Carolina awarded a contract to CSC to develop a new MMIS. CSC designed and developed NCTracks, the new system intended to manage reimbursement payments to health care providers for services provided to Medicaid recipients across North Carolina. NCTracks went live on 1 July 2013, and plaintiffs began submitting claims to DHHS for Medicaid reimbursements under the new system. In the first few months of being in operation, NCTracks experienced over 3,200 software errors, resulting in delayed, incorrectly paid, or unpaid reimbursements to plaintiffs.

On 31 January 2014, plaintiffs filed a First Amended Class Action Complaint against defendants. Plaintiffs asserted that NCTracks ultimately proved to be "a disaster, inflicting millions of dollars in damages upon North Carolina's Medicaid providers." Specifically, plaintiffs alleged that CSC was negligent in its design and implementation of NCTracks and that DHHS breached its contracts with each of the plaintiffs by failing to pay Medicaid reimbursements. Plaintiffs also alleged that they had a contractual right to receive payment for reimbursement claims and that this was "a property right that could not be taken without just compensation." As a result of these allegations, plaintiffs sought damages based upon claims of negligence and

ABRONS FAM. PRAC. & URGENT CARE, P.A. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

unfair and deceptive acts against CSC, and claims of breach of contract and violation of Article I, Section 19 of the North Carolina Constitution against DHHS. Additionally, plaintiffs sought a declaratory judgment that the methodology for payment of Medicaid reimbursement claims established by DHHS violated Medicaid reimbursement rules.

Plaintiffs further maintained that, because the available administrative procedures would not compel the State to adhere to Medicaid reimbursement rules or provide recovery of certain damages, plaintiffs were not required to exhaust their administrative remedies before filing their civil action. Additionally, plaintiffs contended that "the administrative procedures [were] futile and inadequate."

On 4 April 2014, defendants filed motions to dismiss pursuant to North Carolina Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6). Defendants argued, *inter alia*, that plaintiffs' complaint failed to establish personal and subject-matter jurisdiction. The trial court concluded that plaintiffs had failed to exhaust their administrative remedies and had not demonstrated that the available administrative remedies were inadequate. Because the trial court determined that it lacked subject-matter jurisdiction over plaintiffs' claims, it denied as moot defendants' motions to dismiss pursuant to Rules 12(b)(2) and 12(b)(6).

The Court of Appeals majority reversed the trial court's order, holding that the trial court erred by dismissing plaintiffs' complaint for failure to exhaust

ABRONS FAM. PRAC. & URGENT CARE, P.A. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

administrative remedies without resolving "whether DHHS issues final agency decisions in Medicaid claim matters and whether DHHS supplies providers with written notice of its final agency decisions." *Abrons Fam. Prac. & Urgent Care, PA v. N.C. Dep't of Health & Hum. Servs.*, ___ N.C. App. ___, ___, 792 S.E.2d 528, 539 (2016). The Court of Appeals majority also concluded that plaintiffs sufficiently demonstrated that it would be futile to pursue administrative remedies. *Id.* at ___, 792 S.E.2d at 538. Because the Court of Appeals reversed the trial court's order, it did not address plaintiffs' remaining arguments. *See id.* at. ___, 792 S.E.2d at 539.

Judge McCullough dissented, concluding that the trial court's decision should be affirmed because plaintiffs did not exhaust the available administrative remedies or prove that those remedies were inadequate to resolve their claims. *Id.* at ___, 792 S.E.2d at 539-540 (McCullough, J., dissenting). Both defendants appealed based on the dissent and sought discretionary review of additional issues, which this Court allowed.

On appeal to this Court, defendants contend that the Court of Appeals erred by reversing the dismissal of plaintiffs' claims because plaintiffs failed to exhaust their available administrative remedies prior to filing a lawsuit. Defendants also argue that plaintiffs only have speculated that pursuing the available administrative remedies would be futile or inadequate. We agree.

ABRONS FAM. PRAC. & URGENT CARE, P.A. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

Section 108C-12 explicitly indicates that the Administrative Procedure Act (APA) governs the appeals process for Medicaid providers. N.C.G.S. § 108C-12 (2017). The APA states in relevant part that "any dispute between an agency and another person that involves the person's rights, duties, or privileges . . . should be settled through informal procedures." *Id.* § 150B-22 (2017). If the parties do not resolve the dispute through informal procedures, either party may request a formal administrative proceeding, "at which time the dispute becomes a 'contested case.' " *Id.* "[A] request for a hearing to appeal an adverse determination of the Department [of Health and Human Services] . . . is a contested case subject to the provisions of" the Administrative Procedure Act. N.C.G.S. § 108C-12. An "[a]dverse determination" is defined, in relevant part, as "[a] final decision by [DHHS] to deny, terminate, suspend, reduce, or recoup a Medicaid payment." *Id.* § 108C-2(1) (2017). Finally, if a party is aggrieved by the outcome of a contested case hearing and has exhausted all available administrative remedies, the party "is entitled to judicial review of the decision [pursuant to] this Article." *Id.* § 150B-43 (2017).

As authorized by the General Assembly in N.C.G.S. § 108A-54, the Department has promulgated specific rules governing the informal review process. *See generally* 10A NCAC Subchapter 22J (2016). These regulations enumerate the rights of providers to appeal reimbursement rates and challenge the Department's decisions on various claims related to payments. 10A NCAC 22J .0101.

ABRONS FAM. PRAC. & URGENT CARE, P.A. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

When a provider submits a Medicaid reimbursement claim, the Department responds by sending the provider a "Remittance Statement" that discloses the initial disposition of the claim. At this stage, claims are either paid, denied, or placed in "pending" status. A provider may then request a reconsideration review, but must do so within thirty calendar days "from receipt of final notification of payment, payment denial, disallowances, payment adjustment, notice of program reimbursement and adjustments." *Id.* .0102(a). This "final notification . . . means that all administrative actions necessary to have a claim paid correctly have been taken by the provider and . . . the fiscal agent has issued a final adjudication." *Id.* If the provider fails to request a reconsideration review within the specified time period, the state agency's decision becomes final. *Id.* In the alternative, a provider may resubmit a denied claim to DHHS at any time within eighteen months "after the date of payment or denial of [the] claim." 10A NCAC 22B .0104(b) (2016).

If a provider seeks a reconsideration review and disagrees with the result, the provider may request a contested case hearing before the Office of Administrative Hearings (OAH). *Id.* 22J .0104. Then, as outlined in the statutory framework, once all administrative remedies are exhausted, the provider may seek judicial review. N.C.G.S. § 150B-43. Judicial review "is generally available only to aggrieved persons who have exhausted all administrative remedies made available by statute or agency rule." *Empire Power Co. v. N.C. Dep't of Env't, Health & Nat. Res.*, 337 N.C. 569, 594, 447 S.E.2d 768, 783 (1994) (citing N.C.G.S. § 150B-43 (1991)). A plaintiff's failure to

ABRONS FAM. PRAC. & URGENT CARE, P.A. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

exhaust administrative remedies may result in the dismissal of the complaint for lack of subject-matter jurisdiction. *See Presnell v. Pell*, 298 N.C. 715, 722, 260 S.E.2d 611, 615 (1979); *see also Vass v. Bd. of Trs. of the Teachers' & State Emps.' Comprehensive Major Med. Plan*, 324 N.C. 402, 408-09, 379 S.E.2d 26, 30 (1989).

Here, after receiving Remittance Statements that indicated an adverse determination on a Medicaid reimbursement claim, the providers failed to request a reconsideration review or file a petition for a contested case. Instead, plaintiffs bypassed the administrative procedures set forth above and filed a class action complaint in the trial court. To justify their failure to exhaust administrative remedies, plaintiffs rely upon 10A NCAC 22J .0102 which indicates that the provider has thirty calendar days "from receipt of final notification of payment [or] payment denial" to request reconsideration review. 10A NCAC 22J .0102(a). Plaintiffs argue that defendants cannot assert the defense of failure to exhaust administrative remedies because defendants failed to provide the required final notification that triggers the administrative review process. Subsection 150B-23(f) mandates that the time limit to file a petition in a contested case commences "when notice is given of the agency decision to all persons aggrieved" and states that the notice "shall be in writing, and shall set forth the agency action, and shall inform the persons of the right, the procedure, and the time limit to file a contested case petition." N.C.G.S. § 150B-23(f) (2017). CSC argued before the trial court that a provider's receipt of the Remittance Statement triggers the *option* to pursue resubmission or administrative

ABRONS FAM. PRAC. & URGENT CARE, P.A. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

remedies. On the other hand, plaintiffs contend that defendants never provided the required final notification. In addition to arguing that defendants failed to provide final notification, plaintiffs also contend that defendants provided defective notice to plaintiffs of their rights to pursue administrative remedies.

In support of these arguments, plaintiffs cite *Davidson County v. City of High Point*, 321 N.C. 252, 362 S.E.2d 553 (1987). The dispute in *Davidson County* centered around the County's issuance of a special use permit to allow renovation of a City-owned sewage treatment plant. *Id.* at 253, 362 S.E.2d at 554. The County argued that the City could not challenge the meaning of one of the prerequisite conditions necessary to receive a permit because the City had failed to pursue the administrative remedies afforded pursuant to the special use permit. *Id.* at 260, 362 S.E.2d at 558. Plaintiffs in the present case contend that in *Davidson County*, the County provided no notice of administrative remedies and that as a result, this Court rejected the County's assertion that the City failed to exhaust administrative remedies. This is an incorrect interpretation of our conclusion in *Davidson County*. Moreover, an administrative appeal that falls outside the framework of the APA does not provide the best analog for analysis of a dispute that lies squarely within the purview of the APA.

In *Davidson County* this Court determined that "the City was unaware of the County's differing interpretation of" a prerequisite condition to receive a permit and

ABRONS FAM. PRAC. & URGENT CARE, P.A. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

as a result, "could not have known that it should have appealed the issue . . . within thirty days of receiving the permit." *Id.* at 260, 362 S.E.2d at 558. We concluded that "[t]he County cannot now be heard to assert that the City should have pursued administrative remedies for a problem it was unaware existed." *Id.* at 260, 362 S.E.2d at 558. The issue in *Davidson County* turned on whether one party was even aware that a *problem* existed, not whether a party was aware of the available *administrative remedies*. Unlike the plaintiffs in *Davidson County*, plaintiffs in the case *sub judice* were aware not only of the existence of the problem but also of the existence of the available administrative remedies.

In addressing the applicable time limits in which a provider must appeal an adverse determination, the Administrative Code states that a provider may seek reconsideration review after receiving "final notification of payment." 10A NCAC 22J .0102(a). The Code further states that if a provider does not seek such review within thirty days "from receipt of final notification," then the Department's "action shall become final." *Id.* As the Court of Appeals majority highlighted, the central problem here is that the status of the Remittance Statement seems unclear if a "final notification" later becomes "final." *Abrons*, ___ N.C. App. at ___, 792 S.E.2d at 536 (majority opinion). The Administrative Code allows a provider to resubmit a denied claim to DHHS at any time within eighteen months after receiving the Remittance Statement, 10A NCAC 22B .0104(b); yet the previously mentioned provision indicates

ABRONS FAM. PRAC. & URGENT CARE, P.A. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

that if a provider does not seek reconsideration review within the thirty-day window, then that decision becomes final, *id.* 22J .0102.

There does appear to be confusion surrounding the time frame in which a provider must seek reconsideration review, and the State conceded as much in oral argument, acknowledging that there was no statute of limitations running, given the inadequacy of notice. During rebuttal, the State addressed the Court's question originally posed to counsel for the appellee, as to whether Section 150B-23(f) tolls the statute of limitations. Counsel for the State answered, "Of course it does."

Notwithstanding this inadequacy of notice, if a provider was aggrieved by the denial of a reimbursement claim, a reconsideration review should have been requested, followed by the filing of a petition for a contested case hearing, if necessary. In addition, the APA establishes a process by which a party may commence a contested case by, *inter alia*, showing that an agency has failed to use proper procedure. *See* N.C.G.S. § 150B-23(a) (2017) (providing that a petition for a contested case shall state facts establishing that the agency has, *inter alia*, "[f]ailed to use proper procedure" or "[f]ailed to act as required by law or rule"). The APA also gives an aggrieved party the opportunity to request a declaratory ruling to determine "the validity of a rule" or to resolve a conflict "regarding an interpretation of" a rule. *See id.* § 150B-4(a) (2017). The declaratory ruling has the same effect as a final agency decision and would have provided certainty to plaintiffs in pursuit of their determination of whether the Remittance Statement itself was in fact a final

ABRONS FAM. PRAC. & URGENT CARE, P.A. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

statement by the Department.[1]  Although any procedural confusion as to finality and notice does not relieve plaintiffs from the requirement to exhaust their available administrative remedies, here the State has conceded that there is no issue with the statute of limitations running; therefore, plaintiffs remain free to appeal the adverse determinations by initiating contested case hearings at OAH.[2]

This is an essential step in addressing the disputed payments.  The requirement to exhaust administrative remedies ensures that "matters of regulation and control are first addressed by commissions or agencies particularly qualified for the purpose."  *Presnell*, 298 N.C. at 721, 260 S.E.2d at 615.  Although administrative remedies were available to plaintiffs, none of the plaintiffs appear to have invoked these available remedies.  Without a single provider having initiated an appeal from a denied reimbursement claim, it cannot be said that plaintiffs have exhausted all available administrative remedies.

As to their claims against CSC, plaintiffs contend that these claims "are independent of [their] claims for reimbursement against DHHS"; however, their

[1] With that certain determination, there also would have been a very clear path for plaintiffs to exhaust their administrative remedies prior to seeking relief in the General Court of Justice.

[2] We express no opinion as to what our decision would have been in the absence of the State's concession; however, faced with a statute of limitations that concededly is not a bar to plaintiffs' pursuit of their administrative remedies, we are in the unusual position of allowing them to do so notwithstanding the present action.  Our research has disclosed no similar precedent in our law, and we caution that the circumstances in the instant case and magnitude of the current dispute present unique challenges that mandate a resolution which should not be read broadly.

ABRONS FAM. PRAC. & URGENT CARE, P.A. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

amended complaint reveals how intertwined its claims are against DHHS and CSC. For example, plaintiffs allege that "CSC's contract obligated CSC to design and develop NCTracks so that it provided a common, unified, and flexible system meeting DHHS' business requirements regarding Medicaid." Plaintiffs further allege that "DHHS and CSC have also placed thousands of reimbursement claims in 'limbo' by failing to issue decisions on reimbursement claims." The actual language of these excerpts from the complaint indicate the sheer difficulty in wholly separating the actions of DHHS from the actions of CSC.

In further support of their argument that their claims against CSC are independent of their claims against DHHS, plaintiffs also contend that they are suing CSC for its conduct before it became the State's fiscal agent, which took place on the "go-live" date of 1 July 2013. Again, plaintiffs' amended complaint indicates the close involvement between the acts of DHHS and CSC. The amended complaint alleges that CSC was negligent in that it "failed to exercise due care," *inter alia*, "in the attempts to fix defects found in NCTracks after go-live." Therefore, plaintiffs' amended complaint itself uses language that indicates plaintiffs are suing CSC not only for its conduct *before* it became the State's fiscal agent, but also for its conduct *after* said time. Furthermore, plaintiffs' claims against CSC will be affected by the outcome of their claims against DHHS. If, in fact, the reimbursement claims were denied properly, then plaintiffs' claims against CSC may fail or the damages awarded may not be awarded in full. The record in this case reveals that plaintiffs' claims

ABRONS FAM. PRAC. & URGENT CARE, P.A. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

against DHHS and CSC would be difficult, if not impossible, to wholly disentangle. Similarly, the State's and CSC's defenses are interwoven as well. Therefore, plaintiffs' causes of action against CSC remain viable, too.

Plaintiffs also alleged in their complaint that they are exempt from the requirement to exhaust administrative remedies because doing so would be futile and the remedies would be inadequate. Our courts have not required plaintiffs to exhaust administrative remedies prior to bringing suit, if the pursuit of administrative remedies would be futile. *State ex rel. Utils. Comm'n v. S. Bell Tel. & Tel. Co.*, 93 N.C. App. 260, 268, 377 S.E.2d 772, 776 (1989), *rev'd on other grounds*, 326 N.C. 522, 391 S.E.2d 487 (1990). The party claiming excuse from exhaustion bears the burden of alleging both the inadequacy and the futility of the available administrative remedies. *See Snuggs v. Stanly Cty. Dep't of Pub. Health*, 310 N.C. 739, 740, 314 S.E.2d 528, 529 (1984) (per curiam). Plaintiffs first argue that initiating a dispute with DHHS "is not available to Medicaid providers because of the overwhelming number of reimbursement errors and because of [the] utter inability [of DHHS] to address providers' issues." Plaintiffs allege that defendants have "placed thousands of reimbursement claims in 'limbo' by failing to issue decisions on reimbursement claims." Not only do plaintiffs fail to provide an exact number of claims at issue, but, given that there are eight plaintiffs, the inadequacy of the administrative procedures cannot be evaluated on the basis of this bare allegation. Furthermore, this Court previously has determined that the breadth of a claim may not create a burden

ABRONS FAM. PRAC. & URGENT CARE, P.A. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

sufficient to relieve a plaintiff of the exhaustion requirement. *See Lloyd v. Babb*, 296 N.C. 416, 426-28, 251 S.E.2d 843, 850-51 (1979) (requiring exhaustion of administrative remedies notwithstanding plaintiffs having to individually challenge the voting rights of between 6,000 and 10,000 people). Here, the sheer number of claims does not satisfy plaintiff's burden.

Plaintiffs also asserted in their complaint that pursuing administrative remedies would be futile because "[n]o procedures exist to recover for damage to the Plaintiffs' businesses, to recover for payment of the $100 re-enrollment fee . . . and to recover damages in the form of time value of money." The reasoning in *Jackson ex. rel. Jackson v. North Carolina Department of Human Resources Division of Mental Health, Developmental Disabilities, & Substance Abuse Services*, 131 N.C. App. 179, 505 S.E.2d 899 (1998), *disc. rev. denied*, 350 N.C. 594, 537 S.E.2d 213, 214 (1999)—that plaintiffs' insertion of a prayer for monetary damages does not relieve them from the necessity for compliance with the exhaustion requirement—is persuasive here. In *Jackson* the Court of Appeals acknowledged that, although the plaintiff sought damages that could not be awarded through administrative procedures, the plaintiff's primary claim—"the provision of mental health care"—was an issue that first should be determined by the agency. *Id.* at 188-89, 505 S.E.2d at 905. Similarly, plaintiffs' claims in the present case stem from the failure of DHHS to pay Medicaid reimbursement claims. The majority of the claims for relief even specifically mention these unpaid reimbursements. Because resolution of the reimbursement claims must

-15-

ABRONS FAM. PRAC. & URGENT CARE, P.A. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

come from DHHS, simply inserting a prayer for monetary damages does not automatically demonstrate that pursuing administrative remedies would be futile. Notwithstanding the claims that are outside the relief that can be granted by an administrative law judge, the reimbursement claims "should properly be determined in the first instance by the agenc[y] statutorily charged with administering" the Medicaid program. *Id.* at 188-89, 505 S.E.2d at 905. "Pursuing an administrative remedy is 'futile' when it is useless to do so either as a legal or practical matter." *Bailey v. State*, 330 N.C. 227, 248, 412 S.E.2d 295, 308 (1991) (Mitchell, J., concurring in part and dissenting in part) (quoting *Honig v. Doe*, 484 U.S. 305, 327, 108 S. Ct. 592, 606, 98 L. Ed. 2d 686, 709 (1988)), *cert. denied*, 504 U.S. 911, 112 S. Ct. 1942, 118 L. Ed. 2d 547 (1992), *disavowed by Bailey v. State*, 348 N.C. 130, 500 S.E.2d 54 (1998). Plaintiffs have failed to demonstrate that pursuing reconsideration review or a contested case would be "useless."

Finally, in addressing plaintiffs' allegations regarding business damages, the trial court, in its Amended Opinion and Order on Motions to Dismiss, included the following footnote:

> The Court notes that Plaintiffs did not cite to any authority to support their assertion that the business damages they seek could not be sought through the administrative process, and the Court is unable to find any specific statute, regulation, or case law expressly stating that tort-type damages are unavailable as a remedy at the administrative level in this context.

ABRONS FAM. PRAC. & URGENT CARE, P.A. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

This conclusion incorrectly interprets the scope of an administrative hearing. The purpose of the APA is to "ensure that the functions of rule making, investigation, advocacy, and adjudication are not all performed by the same person in the administrative process." N.C.G.S. § 150B-1(a) (2017). Furthermore, five specific grounds for alleging an agency's wrongdoing are enumerated in N.C.G.S. § 150B-23(a). By its very nature, the quasi-judicial forum of an administrative hearing precludes the adjudication of claims seeking compensatory damages; however, when any part of the relief sought is provided through an administrative process, a plaintiff must exhaust that process prior to seeking the same or related relief from the judicial system.

In conclusion, the Department's decision to deny plaintiffs' claims would be subject to judicial review only after plaintiffs had exhausted their available administrative remedies or demonstrated that doing so would have been futile. Plaintiffs have not succeeded at either endeavor; however, given the inadequacy of notice, plaintiffs still are entitled to exhaust the available administrative remedies. Nevertheless, because plaintiffs have failed to exhaust their administrative remedies and have failed to demonstrate futility of the available remedies at this time, the Court of Appeals erred by reversing the dismissal of plaintiffs' claims. For the foregoing reasons, we reverse the decision of the Court of Appeals.

REVERSED.