IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-900

No. COA22-407

Filed 29 December 2022

Lenoir County, No. 19 CVS 525

JOSEPH ASKEW; CHARLIE GORDON WADE III; and CURTIS WASHINGTON, Plaintiffs,

v.

CITY OF KINSTON, a Municipal Corporation, Defendant.

Appeal by Plaintiffs from order entered 29 September 2021 by Judge Joshua Willey in Lenoir County Superior Court. Heard in the Court of Appeals 30 November 2022.

*Ralph Bryant Law Firm, by Ralph T. Bryant, Jr., for Plaintiffs-Appellants.*

*Hartzog Law Group LLP, by Dan M. Hartzog, Jr., and Katherine Barber-Jones, for Defendant-Appellee.*

COLLINS, Judge.

¶ 1   Plaintiffs Joseph Askew and Curtis Washington bring this action against Defendant City of Kinston alleging violations of their constitutional rights to equal protection and due process resulting from Defendant's decision to condemn and mark for demolition three properties in Kinston, North Carolina. Plaintiffs appeal an order granting Defendant's motion for summary judgment and dismissing Plaintiffs' claims

with prejudice.[1]  Because Plaintiffs did not exhaust their administrative remedies before filing this direct constitutional action in superior court, the trial court lacked subject matter jurisdiction to hear Plaintiffs' claims.  Accordingly, we vacate the trial court's order and remand the matter to the trial court to dismiss Plaintiffs' claims without prejudice for lack of subject matter jurisdiction.

## I.    Factual Background

¶ 2         Plaintiffs contest Defendant's decision to condemn and mark for demolition three properties in Kinston, North Carolina: 110 North Trianon Street and 607 East Gordon Street, owned by Askew,[2] and 610 North Independence Street, owned by Washington.

### A. The Condemnation Process[3]

¶ 3         Under N.C. Gen. Stat. § 160A-426, a building inspector has the authority to declare a building unsafe upon determining that the building is "especially dangerous

---

[1] Plaintiff Charlie Gordon Wade III voluntarily dismissed his complaint without prejudice prior to the order granting summary judgment in favor of Defendant.

[2] Askew's son was the record owner of these properties when they were first condemned.  Ownership was transferred to Askew by deed recorded 24 January 2019.

[3] Citing the need for "a coherent organization of statutes that authorize local government planning and development regulation," the General Assembly repealed Article 19 of Chapter 160A of the General Statutes and added Chapter 160D in 2019.  An Act to Clarify, Consolidate, and Reorganize the Land-Use Regulatory Laws of the State, §§ 2.1.(a), 2.3, 2019 N.C. Sess. Laws 424, 439 (effective 1 Jan 2021).  Chapter 160D "collect[s] and organize[s] existing statutes," and is not intended to "eliminate, diminish, enlarge, [or] expand the authority of local governments . . . ."  *Id.* § 2.1.(e)-(f).  Article 19 of Chapter 160A remained in effect at all relevant times in this case.  *Id.* at 547, § 3.2.

to life because of its liability to fire or because of bad condition of walls, overloaded floors, defective construction, decay, unsafe wiring or heating system, inadequate means of egress, or other causes." N.C. Gen. Stat. § 160A-426(a). If the owner of a building that has been condemned as unsafe fails to take prompt corrective action, the inspector must notify the owner:

> (1) That the building or structure is in a condition that appears to meet one or more of the following conditions:
>
>> a. Constitutes a fire or safety hazard.
>>
>> b. Is dangerous to life, health, or other property.
>>
>> c. Is likely to cause or contribute to blight, disease, vagrancy, or danger to children.
>>
>> d. Has a tendency to attract persons intent on criminal activities or other activities which would constitute a public nuisance.
>
> (2) That a hearing will be held before the inspector at a designated place and time, not later than 10 days after the date of the notice, at which time the owner shall be entitled to be heard in person or by counsel and to present arguments and evidence pertaining to the matter; and
>
> (3) That following the hearing, the inspector may issue such order to repair, close, vacate, or demolish the building or structure as appears appropriate.

*Id.* § 160A-428.

> If, upon a hearing held pursuant to the notice prescribed in G.S. 160A-428, the inspector shall find that the building or structure is in a condition that constitutes a fire or safety hazard or renders it dangerous to life, health, or other property, he shall make an order in writing, directed to the owner of such building or structure, requiring the owner to remedy the defective conditions by repairing, closing,

vacating, or demolishing the building or structure or taking other necessary steps [within a time period] as the inspector may prescribe . . . .

*Id.* § 160A-429.

¶ 4      "Any owner who has received an order under G.S. 160A-429 may appeal from the order to the city council by giving notice of appeal in writing to the inspector and to the city clerk within 10 days following issuance of the order." *Id.* § 160A-430. "The city council shall hear and render a decision in an appeal within a reasonable time. The city council may affirm, modify and affirm, or revoke the order." *Id.* "In the absence of an appeal, the order of the inspector shall be final." *Id.*

¶ 5      N.C. Gen. Stat. § 160A-393, provides for review in the nature of certiorari by the superior court of the quasi-judicial decisions of decision-making boards under Chapter 160A, Article 19, which includes the condemnation process and the city council's consideration of orders issued pursuant to N.C. Gen. Stat. § 160A-429. *See id.* § 160A-393(a)-(b).

¶ 6      On certiorari review, "the court shall ensure that the rights of petitioners have not been prejudiced" because the decision being appealed was, inter alia, "[i]n violation of constitutional provisions," or "[a]rbitrary or capricious." *Id.* § 160A-393(k)(1). If the court concludes that the decision was made in error, "then the court may remand the case with an order that directs the decision-making board to take whatever action should have been taken had the error not been committed or

to take such other action as is necessary to correct the error." *Id.* § 160A-393(l)(3).

## B. Condemnation of Askew's Properties

In 2017, Defendant's city inspectors generated a list of over 150 properties that were unoccupied and would be subject to condemnation under North Carolina law. Inspectors then narrowed the list to 50 properties to prioritize for the condemnation and demolition process based on the following criteria:

    a. Dilapidated, blighted, and/or burned properties;

    b. Residential (noncommercial) properties;

    c. Vacant/unoccupied properties;

    d. Properties in proximity to a public use, such as a school or a park;

    e. Properties fronting on or in close proximity to a heavily travelled road;

    f. Properties in proximity to other qualifying properties (ie, forming part of a "cluster" of dilapidated properties); and

    g. Properties in an area of police concern.

In September 2017, the city council reviewed and approved the inspectors' criteria and finalized the list of properties to prioritize for condemnation. The list of 50 properties included 110 North Trianon Street and 607 East Gordon Street.

110 North Trianon Street was condemned as dangerous to life on 28 November 2017 because of liability to fire, bad condition of the walls, decay, and unsafe wiring. After a hearing on 9 April 2018, the building inspector issued an order to abate, directing Askew to "remedy the defective conditions within 120 days from the date of

this Order, by: Repairing the building or Demolishing the building and clearing the lot of all debris." The order informed Askew of his right to appeal the order to the city council "by giving notice to the [Building Inspector] and the City Clerk within 10 days . . . ." Askew did not appeal this order.

¶ 9        The building inspector re-inspected 110 North Trianon Street on 6 November 2018 and recommended "[m]oving forward with the condemnation process," noting that "[t]here has not been an observable improvement to the condition of the property." Askew requested to be heard by the city council on 20 November 2018 and was heard at the 7 January 2019 city council meeting. The city council treated Askew's request as an appeal and, after hearing from Askew, decided to proceed with the condemnation process. Askew announced that he intended to appeal and that he would sue in federal court. There is no evidence in the record that Askew petitioned the superior court for certiorari. The condemnation process is now complete with respect to this property.

¶ 10        607 East Gordon Street was condemned as dangerous to life because of liability to fire, bad condition of the walls, decay, unsafe wiring, and house damage from fire on 28 November 2017. After a hearing on 9 April 2018, the building inspector issued an order to abate, directing Askew to "remedy the defective conditions [in three phases] within 60 days from the date of this Order, for the first phase, 120 days for the second phase and 120 days for the third phase by: Repairing the building or

Demolishing the building and clearing the lot of all debris." The order informed Askew of his right to appeal the order to the city council "by giving notice to the [Building Inspector] and the City Clerk within 10 days . . . ." Askew did not appeal this order.

¶ 11      The building inspector re-inspected 607 East Gordon Street on 16 July and 20 November 2018 and noted that "[p]lans have been provided for the repair," that "[p]ermits have been issued for the repair or demolition," and that "[t]here has been an observable improvement to the condition of the property." On both occasions, the building inspector recommended "[g]ranting the owner [additional time] to obtain the necessary permits and begin repair or demolition." On 5 April 2019, the building inspector re-inspected 607 East Gordon Street and concluded that "Askew has failed to stabilize the structure or protect the building from water damage that continues to cause rot and decay. It is my opinion that the dangerous conditions listed on the original condemnation order still exist." The condemnation process is now complete with respect to this property.

**C. Condemnation of Washington's Property**

¶ 12      610 North Independence Street was condemned as dangerous to life because of liability to fire, bad condition of the walls, decay, and roof collapsing on 15 November 2018. After a hearing on 21 June 2019, the building inspector issued an order to abate, directing Washington to "remedy the defective conditions within 120 days from

the date of this Order, by: Repairing the building or Demolishing the building and clearing the lot of all debris." The order informed Washington of his right to appeal the order to the city council "by giving notice to the [Building Inspector] and the City Clerk within 10 days . . . ." Washington did not appeal this order. The condemnation process is now complete with respect to this property.

## II.    Procedural History

¶ 13        Plaintiffs initially filed a complaint against Defendant in federal court in January 2019, alleging "violations of their [Fourteenth] amendment, substantial due process, equal protection rights, discrimination, disparity and condemnation of a historical home." *Askew v. City of Kinston*, No. 4:19-CV-13-D, 2019 WL 2126690, at *1 (E.D.N.C. May 15, 2019). Plaintiffs' federal complaint was dismissed in May 2019 for lack of subject matter jurisdiction. *Id.* at *4.

¶ 14        Plaintiffs then commenced this action by filing a complaint in Lenoir County Superior Court in June 2019, alleging violations of their rights to equal protection and due process under the North Carolina Constitution and seeking a declaratory judgment, injunctive relief, and damages in excess of $25,000. Defendant filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the rules of civil procedure, which the trial court denied. Defendant then filed an answer to the complaint, generally denying the material allegations and asserting twelve affirmative defenses, including that "Plaintiffs' claims are barred, in whole or in part,

by their failure to exhaust administrative remedies, and/or satisfy the administrative prerequisites to the filing of this action." Defendant moved for summary judgment in July 2021, reiterating that "Plaintiffs have failed to establish any evidence that . . . Plaintiffs have no adequate alternative remedies, [or] that Plaintiffs exhausted their administrative remedies." After a hearing, the trial court entered a written order on 29 September 2021 granting Defendant's motion for summary judgment on all claims. Plaintiffs timely appealed to this Court.

### III. Discussion

Plaintiffs argue that the trial court erred by granting summary judgment in favor of Defendant on Plaintiffs' substantive due process and equal protection claims. Defendant argues, inter alia, that Plaintiffs' direct constitutional claims are barred because Plaintiffs failed to exhaust their administrative remedies and Plaintiffs had an adequate remedy provided by statute.

**A. Subject Matter Jurisdiction**

Subject matter jurisdiction is a prerequisite for the exercise of judicial authority over any case or controversy. *In re T.R.P.*, 360 N.C. 588, 590, 636 S.E.2d 787, 790 (2006). "A party may not waive jurisdiction, and a court has inherent power to inquire into, and determine, whether it has jurisdiction and to dismiss an action *ex mero motu* when subject matter jurisdiction is lacking." *Reece v. Forga*, 138 N.C. App. 703, 704, 531 S.E.2d 881, 882 (2000) (citations omitted). An action is properly

dismissed for lack of subject matter jurisdiction when the plaintiff has failed to exhaust its administrative remedies. *Flowers v. Blackbeard Sailing Club*, 115 N.C. App. 349, 352-53, 444 S.E.2d 636, 638-39 (1994). "[W]here the legislature has provided by statute an effective administrative remedy, that remedy is exclusive and its relief must be exhausted before recourse may be had to the courts." *Presnell v. Pell*, 298 N.C. 715, 721, 260 S.E.2d 611, 615 (1979) (citations omitted).

**B. Exhaustion of Administrative Remedies**

¶ 17        Plaintiffs have brought equal protection and substantive due process claims under North Carolina Constitution Article I, Section 19, which states:

> No person shall be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or in any manner deprived of his life, liberty, or property, but by the law of the land. No person shall be denied the equal protection of the laws; nor shall any person be subjected to discrimination by the State because of race, color, religion, or national origin.

N.C. Const. art. I, § 19.

¶ 18        It is an essential element of a direct claim under the North Carolina Constitution that the plaintiff have no other legal remedy available. *Swain v. Elfland*, 145 N.C. App. 383, 390, 550 S.E.2d 530, 536 (2001). However, "in the absence of an adequate state remedy, one whose state constitutional rights have been abridged has a direct claim against the State under our Constitution." *Corum v. Univ. of N.C.*, 330 N.C. 761, 782, 413 S.E.2d 276, 289 (1992). "[T]o be considered

adequate in redressing a constitutional wrong, a plaintiff must have at least the opportunity to enter the courthouse doors and present his claim." *Craig ex. rel. Craig v. New Hanover Cnty. Bd. of Educ.*, 363 N.C. 334, 339-40, 678 S.E.2d 351, 355 (2009). Additionally, "an adequate remedy must provide the possibility of relief under the circumstances." *Id.* at 340, 678 S.E.2d at 355. "The party claiming excuse from exhaustion bears the burden of alleging both the inadequacy and the futility of the available administrative remedies." *Abrons Fam. Prac. and Urgent Care, PA v. N.C. Dep't of Health and Hum. Servs.*, 370 N.C. 443, 451, 810 S.E.2d 224, 231 (2018) (citation omitted).

### 1. *Adequacy and Futility*

Plaintiffs allege that "there is no adequate remedy at state law to redress the deprivation of plaintiffs' rights . . . ." However, N.C. Gen. Stat. §§ 160A-430 and 160A-393 provide Plaintiffs both "the opportunity to enter the courthouse and present [their] claim" and "the possibility of relief" contemplated in *Craig*, through direct appeal to the city council and certiorari review by the superior court.

Plaintiffs allege that they have "been injured by the City of Kinston's action of condemning their property, and/or placing their property on the list for demolition, and/or ordering the demolition of their property, and/or placing their property on a schedule for imminent demolition"; that the decision to demolish Plaintiffs' property was "based upon plaintiff's race"; and that Defendant's "refusal to remove plaintiff's

property from the list of properties to be demolished is arbitrary and capricious." These injuries are within the scope of the city council's review on direct appeal and the superior court's review on certiorari. *See* N.C. Gen. Stat. § 160A-430 (authorizing the city council to hear an appeal without limitation); N.C. Gen. Stat. § 160A-393(k)(1) (authorizing the superior court to review a decision-making board's quasi-judicial decisions for constitutional violations). Plaintiffs primarily seek to enjoin Defendant from demolishing Plaintiffs' properties. This relief is within the city council's authority on direct appeal – the council may revoke a condemnation order. *Id.* § 160A-430. This relief is also within the superior court's authority on certiorari review – the court may remand to the governing board with instructions to remove Plaintiffs' property from the demolition list. *See id.* § 160A-393(l)(3).

¶ 21        Because the statutes authorize the city council and the superior court to review Plaintiffs' injuries and grant the relief Plaintiffs seek, the statutory scheme provides Plaintiffs with "the opportunity to enter the courthouse doors and present [their] claim" and "the possibility of relief," and therefore provides an adequate remedy. *See Craig*, 363 N.C. at 339-40, 678 S.E.2d at 355. Furthermore, Plaintiffs do not allege that exhaustion would be futile. Accordingly, Plaintiffs are not excused from exhausting their administrative remedies. *See Abrons*, 370 N.C. at 451, 810 S.E.2d at 231.

### 2. *Exhaustion*

The record evidence does not support the conclusion that Plaintiffs exhausted their administrative remedies before filing the present complaint under the North Carolina Constitution; Plaintiffs do not argue otherwise.

With respect to 110 North Trianon Street, Askew attended a hearing and was issued an order to abate, pursuant to N.C. Gen. Stat. § 160A-429. Askew did not give notice of appeal in writing to the inspector and to the city clerk as required by N.C. Gen. Stat. § 160A-430. Nevertheless, the city council treated Askew's November 2018 request to be heard as an appeal, which it heard and denied in January 2019. There is no evidence in the record that Askew petitioned for certiorari to the superior court.

With respect to 607 East Gordon Street and 610 North Independence Street, Askew and Washington attended respective hearings and were issued orders to abate, pursuant to N.C. Gen. Stat. § 160A-429. Plaintiffs did not give written notice of appeal to the inspector and to the city clerk as required by N.C. Gen. Stat. § 160A-430. In the absence of appeal, the orders to abate are final. N.C. Gen. Stat. § 160A-430.

Because Plaintiffs did not exhaust their administrative remedies with respect to any of the properties at issue, the trial court lacked jurisdiction to hear Plaintiffs' direct constitutional claims. *Flowers*, 115 N.C. App. at 352-53, 444 S.E.2d at 638-39.

## IV.    Conclusion

Because Plaintiffs did not exhaust their administrative remedies before filing this direct constitutional action in superior court, the trial court lacked subject matter jurisdiction to hear Plaintiffs' direct constitutional claims.  Accordingly, we vacate the trial court's order and remand the matter to the trial court to dismiss Plaintiffs' claims without prejudice for lack of subject matter jurisdiction.

VACATED AND REMANDED WITH INSTRUCTIONS.

Judges ARROWOOD and JACKSON concur.